KAREN S. FOHR (PROBST), Plaintiff-Appellant, *v.* ROBERT A. FOHR, Defendant-Appellee.

Fifth District   No. 78-507

Opinion filed August 31, 1979.

Roger S. Murphy, of McGlynn & McGlynn, of Belleville, for appellant.

D. Kent Trone, of Metzger and Trone, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff wife appeals an order of the trial court which modified a decree of divorce by changing the award of custody of minor children from plaintiff to defendant husband. We affirm.

Plaintiff and defendant were married on July 4, 1962, and, after having two children, divorced by a decree entered on January 24, 1975. Pursuant to an agreement of the parties custody of the children, James, then age 5, and Scott, then age 1, was awarded to the plaintiff with the defendant to have liberal visitation rights. Plaintiff continued in custody of the children until October 18, 1975, when she gave physical custody to defendant. Defendant had just moved into his parents' home but soon

thereafter he and the children moved into a home he had recently purchased just across the street and two houses away from the parents' home.

Plaintiff had two short episodes of hospitalization in the psychiatric ward of a hospital in November and December of 1975, the latter episode as a result of a drug overdose. On January 17, 1976, plaintiff was married to Ken Gaultney whom she had met through a computerized dating service. He had been a patient in the same psychiatric ward of the hospital as plaintiff in November of 1975. In June and October of 1976 plaintiff was again briefly hospitalized in a psychiatric ward. Gaultney obtained a divorce from plaintiff on November 18, 1976, on the grounds of mental cruelty. Throughout the approximately 14-month period defendant had had custody of the children he worked at General Steel Industries in Clayton, Missouri. While defendant was at work the children would be cared for by Linda Burnett, who was a married woman with children of her own.

By arrangement with defendant plaintiff had visitation with the children on Christmas Day 1976 and New Year's Day 1977. On the latter day plaintiff called defendant in the afternoon and told him she had married James Probst at his home in Millstadt, that she was not returning the children to defendant but was going to keep them with herself and Probst. The marriage to plaintiff was Probst's first. He was employed at the St. Louis Shipbuilding Co. and also worked on his farm at Millstadt.

In a telephone conversation January 2, 1977, the plaintiff told defendant he could thenceforth visit the children only in her home in Millstadt. The same advice was given in a letter from plaintiff to defendant dated January 6, 1977. On January 13, 1977, defendant filed a petition for an order granting specific visitation rights. An agreed order for visitation on alternate weekends, some holidays and during the summer was entered on February 10.

On April 15, 1978, defendant filed a petition to modify the divorce decree relative to the custody of the children. Plaintiff filed an answer and counterpetition and defendant filed an answer to the counterpetition. The trial court conducted four days of hearings on the petitions. The hearings included an in-chambers conference between the judge and the children. Both attorneys were present at the conference and a record of the interview was made.

At the close of all the evidence the court took the case under advisement and on June 7, 1978, entered a judgment changing custody of the children from plaintiff to defendant and awarding plaintiff the same visitation rights defendant had been granted by the order of February 10, 1977. The court's judgment contained the following findings:

"[A] change in the circumstances of the children has occurred since

the Decree of Divorce and that a modification of their custody is necessary to serve their best interests, that the children's present environment endangers seriously their physical, mental and emotional health, and that any harm that might be caused by a change in their environment is outweighed by its advantages to them."

Evidence adduced at the hearing disclosed that Probst had spanked both James and Scott with a fly swatter, using both the handle and the striking portion, on several occasions and had otherwise beaten the boys. On the occasion of one spanking of James with the fly swatter, severe bruises had been inflicted upon the buttocks and the matter was reported by defendant to the police and the Illinois Department of Children and Family Services. On another occasion Scott had been spanked with the hand so hard that severe bruising had resulted and the matter was also reported to the police and the Department of Children and Family Services. On both occasions, according to medical testimony, the beating administered was moderate to severe. It was also disclosed that when the boys were spanked their pants were first pulled down.

Other evidence disclosed that when the children would ask Probst what they were having for supper he would reply "sow shit and sardines" because he thought that sounded better than "shut up, it's none of your business."

On another occasion Probst made Scott eat mucous with ketchup, mustard and salt in order to break him from eating mucous.

On another occasion Probst made Scott eat part of a crayon in order to break him from chewing crayons.

■■ The above are but a part of the extensive findings made by the trial court in rendering its decision. The record amplifies abuse of the children by both Probst and plaintiff and the decision of the trial court in ordering a change of custody is fully supported by the evidence. We can find no basis for overturning the decision and accordingly decline to do so.

Plaintiff contends that the court went far beyond the legally permissible in conducting the in-chambers interview with the children during the hearing. She argues that the statute (Ill. Rev. Stat. 1977, ch. 40, par. 604(a)) limits the scope of such interviews to the determination by the court of the wishes of the children regarding their custody and visitation. In this case, she contends, the court erred when it went outside the custody issue and turned the in-chambers hearing into a wide-ranging adversarial proceeding which touched upon many factors other than the wishes of the children regarding custody and visitation.

■■ The argument is not well taken. The plaintiff's counsel was present at and participated in the in-chambers conference in all its aspects and made no objection of the nature now advanced here. The objection is therefore

waived. Moreover, the statutory admonition to the court to conduct the interview "to ascertain the child's wishes as to his custodian and as to visitation" necessarily clothes the court with considerable discretion in setting the subject-matter limitations of the inquiry. Factual situations are bound to vary widely as will the personalities of the children being interviewed. Basic to an intelligent election by a child would be an understanding of the necessity, background and basis for a decision. Before a judge can properly weigh an election he must satisfy himself that the child is making it while possessed of the understanding that his age, intelligence, knowledge and experience will permit him to assimilate. The court's obligation to determine such factors operates to expand the scope of the court's inquiry. In addition to the foregoing matters we find additional protection and control afforded the litigants by the presence of attorneys at the in-chambers conference.

■■ We find no abuse in discretion by the trial court in its fixing of the range of its inquiry during the in-chambers conference.

Following the entry of judgment by the trial court the plaintiff filed a motion to vacate judgment and for a rehearing in which she alleged as a fact, supported by her affidavit, that the defendant was not the father of the children because he was at all times relevant naturally impotent; that the children were in fact fathered as a result of her extramarital affairs, and she could name the fathers of each of the children.

■■ Plaintiff's claim that defendant is not the father of the children cannot be raised and considered in this proceeding. The question of parentage has already been determined by the court in its decree of divorce entered on January 24, 1975. Plaintiff herself procured that decree by her complaint and her sworn testimony. No motion to set aside the decree was filed within 30 days and no appeal was taken. No petition to set aside was ever filed pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). Accordingly, the prior decree is now *res judicata* as to the issue of parentage.

■■ We would also deny this latter claim of plaintiff on the grounds of estoppel. It was she who procured the prior decree of the court, finding the parentage of the children through her own pleadings and sworn testimony. She cannot now be heard to say that she previously committed a fraud on the court in order to obtain a present favorable judgment. (See *Sanders v. Sanders* (1977), 55 Ill. App. 3d 248. *In re Adoption of Weller* (1977), 47 Ill. App. 3d 492, cited by plaintiff is an adoption case and otherwise not factually in point.

Affirmed.

G. MORAN and KASSERMAN, JJ., concur.