187 Ill. App.3d 723 (1989)
543 N.E.2d 1093
In re MARRIAGE OF BOBETTE TZOUMAS, n/k/a Bobette Psarro, Petitioner-Appellee, and HARRY TZOUMAS, Respondent-Appellant.
No. 2-88-0590.
Illinois Appellate Court  Second District.
Opinion filed August 31, 1989.
*724 *725 *726 Leon I. Finkel, of Kalcheim, Schatz & Berger, of Chicago, for appellant.
No brief filed for appellee.
Reversed and remanded.
JUSTICE LINDBERG delivered the opinion of the court:
 1 Respondent, Harry Tzoumas, appeals from numerous orders of the circuit court of Du Page County denying his petition pursuant to section 2-1401 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2-1401) to vacate a judgment for dissolution of marriage incorporating a marital settlement agreement and the child support provisions contained therein. Petitioner, Bobette Tzoumas, n/k/a Bobette Psarro, has not filed a brief on appeal. We proceed to address the merits of the appeal. First Capitol Mortgage Corp. v. Talandis Construction Corp. (1976), 63 Ill.2d 128, 345 N.E.2d 493 (judgment of trial court should not be reversed pro forma for appellee's failure to file brief).
We issued an opinion in this case on March 20, 1989. Respondent filed a petition for rehearing and a motion to supplement the record on appeal (107 Ill.2d R. 329). We granted respondent leave to obtain trial court certification of the supplemental record on appeal. Respondent has obtained the trial court's certification of the supplemental record. We deny the petition for rehearing and withdraw the opinion filed in this case on March 20, 1989, and order the instant opinion to be filed.
The parties were married on October 17, 1971. On January 11, 1984, Bobette instituted dissolution proceedings against Harry. At this time, the parties had no children, nor was Bobette pregnant. The parties reconciled. On February 5, 1985, Bobette gave birth to a child, Nick Tzoumas. The parties' efforts at reconciliation failed, and on January 13, 1986, the proceeding for dissolution was reinstated. On August 25, 1986, in the circuit court of Du Page County a judgment *727 for dissolution of marriage was entered incorporating a settlement agreement which included issues of child support for the one child born of the parties' marriage, Nick.
On June 10, 1987, Harry filed a motion entitled "Emergency Petition for Rule to Show Cause and Other Relief." Count I of this petition involved a dispute over visitation with Nick and is not an issue on appeal. Count II of Harry's petition, entitled, "Petition Pursuant to Section 2-1401 of the Illinois Code of Civil Procedure," alleged in substance that on December 13, 1986, Harry became aware of facts that led him to question whether he was, in fact, the biological father of Nick; that such facts were fraudulently concealed by Bobette; and that had he known such facts Harry would not have entered the settlement agreement contained in the court's August 25, 1986, judgment of dissolution. Harry requested that the trial court order Bobette and Nick to submit to blood tests to determine parentage and vacate the August 25, 1986, judgment for dissolution.
Bobette did not respond to Harry's petition. On September 10, 1987, the trial court entered an order denying Harry's request for blood tests which Harry sought to enable him to establish his right to relief under his section 2-1401 petition. The order of September 10, 1987, did not dismiss Harry's petition to vacate the judgment. On March 16, 1988, Harry again filed a motion seeking a trial court order for blood tests to enable Harry to establish whether or not he was the father of Nick. Harry relied upon Supreme Court Rule 215(a) (107 Ill.2d R. 215(a)), authorizing certain medical exams as part of discovery, as well as section 11 of the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2511), concerning blood tests in actions involving questions of paternity. Bobette failed to respond. Again, the trial court denied Harry's motion. On April 15, 1988, Harry filed a motion to reconsider the March 16, 1988, order of the court. This motion was denied on May 18, 1988. A notice of appeal was filed June 16, 1988, and an amended notice of appeal was filed July 15, 1988, seeking review of all the trial court orders denying Harry's attempts to obtain blood tests and to vacate the August 25, 1986, judgment for dissolution which found Nick to be a child born of the parties' marriage.
 2, 3 On appeal, respondent argues the trial court abused its discretion in refusing to grant the relief requested pursuant to section 2-1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2-1401). Initially, we note that respondent has failed to comply with the recent amendment to Supreme Court Rule 341, effective August 1, 1988, which requires a brief statement or explanation of the jurisdictional *728 basis for appellate review of the trial court's order. (122 Ill.2d R. 341(e)(4)(ii).) Additionally, an appellate court has a duty to consider its own jurisdiction and to dismiss an appeal if it determines that appellate jurisdiction is lacking. Benet Realty Corp. v. Lisle Savings & Loan Association (1988), 175 Ill. App.3d 227, 529 N.E.2d 718.
 4-6 Supreme Court Rule 304(b)(3) (107 Ill.2d R. 304(b)(3)) makes appealable an order granting or denying relief requested pursuant to section 2-1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2-1401). Supreme Court Rule 303(a) (107 Ill.2d R. 303(a)) requires that a notice of appeal be filed within 30 days of an order granting or denying relief pursuant to section 2-1401, unless a motion to reconsider or vacate the grant or denial of section 2-1401 relief is filed within 30 days of the court's ruling on the section 2-1401 petition. (Burnicka v. Marquette National Bank (1982), 88 Ill.2d 527, 431 N.E.2d 358.) Where such a motion is filed within 30 days of the trial court's judgment concerning relief requested pursuant to section 2-1401, such motion is a post-trial motion directed against the judgment and will extend the time to file a notice of appeal until 30 days after the order disposing of the motion is entered. (Burnicka v. Marquette National Bank (1982), 88 Ill.2d 527, 431 N.E.2d 358; Tucker v. McNulty (1988), 173 Ill. App.3d 722, 527 N.E.2d 953; 107 Ill.2d R. 303(a).) In the instant case, Harry's section 2-1401 petition was dismissed on March 16, 1988. A timely motion to reconsider was filed within 30 days, on April 15, 1988. This motion was denied on May 18, 1988, and reiterated the dismissal of Harry's petition with prejudice. Within 30 days of denial of Harry's motion to reconsider dismissal, a timely notice of appeal was filed on June 16, 1988. (107 Ill.2d R. 303(a).) We allowed respondent to file an amended notice of appeal on July 15, 1988. Having found proper appellate jurisdiction, we proceed to address the merits of respondent's contention that the trial court erred in dismissing his section 2-1401 petition and in refusing his requests for blood tests to determine parentage.
 7, 8 The function of a section 2-1401 petition to vacate judgment is to bring to the trial court's attention facts or matters which, had they been known to the trial court at the time judgment was entered, would have prevented the trial court's entry of the judgment. (Zimmerman v. Village of Skokie (1988), 174 Ill. App.3d 1001, 529 N.E.2d 599.)
"To prevail on a section 2-1401 petition, a plaintiff must prove first that if the grounds for relief had been known at trial, it would have prevented the entry of judgment against the petitioner, and second, that the failure to discover and present the *729 ground for relief was not the result of the petitioner's own lack of diligence." (Malek v. Lederle Laboratories (1987), 152 Ill. App.3d 493, 497, 504 N.E.2d 893, 895.)
 9, 10 Although a section 2-1401 petition is filed in the same action in which the judgment it seeks to have vacated was entered, the petition is not a continuation of the prior action but a new action subject to the usual rules of civil practice and is to be considered in the same manner as a civil complaint. (Ostendorf v. International Harvester Co. (1982), 89 Ill.2d 273, 433 N.E.2d 253.) Generally, a party will prevail on a section 2-1401 petition to vacate a judgment where he shows by a preponderance of the evidence: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting that defense or claim in the original action; (3) but through no fault or lack of diligence on petitioner's part, an error of fact or a valid defense or claim was not made to appear to the trial court at the time the challenged judgment was entered; and (4) due diligence in filing the petition for section 2-1401 relief. In re Marriage of Duffey (1988), 168 Ill. App.3d 1086, 523 N.E.2d 371.
 11 In the instant case, the trial court's dismissal of Harry's section 2-1401 petition, without any evidentiary hearing or response by Bobette, is tantamount to a dismissal of Harry's complaint for failing to state a cause of action as a matter of law. (Cf. Ostendorf v. International Harvester Co. (1982), 89 Ill.2d 273, 433 N.E.2d 253 (legal sufficiency of allegations contained in a section 2-1401 petition to vacate a judgment may be tested by a motion to dismiss which admits, as true, all well-pleaded factual allegations of the petition).) Harry's petition alleged the existence of a marital settlement agreement and judgment of dissolution based thereon, entered by the trial court in August 1986 and that as part of the settlement agreement and on other numerous occasions, Bobette, at the time of entry of judgment of dissolution, represented to Harry that Harry was the biological father of Nick. Harry stated that he reasonably relied on Bobette's representations concerning the parentage of Nick and based thereon entered into the settlement agreement which obligated him to provide support to Nick, which obligations were incorporated into the judgment of dissolution. Harry further alleged that, at the time of judgment, Bobette knew Harry was not the biological father of Nick and that she fraudulently concealed this fact from Harry. Harry alleged that had he known that he was not the biological father of Nick, he would not have entered the settlement agreement, which was incorporated into the judgment of dissolution, which obligated him to provide support to the minor child, Nick. Harry stated that he had first become *730 aware of the possibility that he was not the biological father of Nick on December 13, 1986. In support of his petition, Harry also filed with his petition his affidavit in support of his request for relief pursuant to section 2-1401 of the Code. Harry's affidavit stated, among other facts, that Bobette repeatedly told him between December 1986 and February 1987 that Harry was not the biological father of Nick, but that Nick was fathered by another individual, George Doe. Since the entry of the judgment of dissolution, various friends and relatives of Harry have observed Bobette and Nick in the company of the putative father, George Doe, and various friends and relatives have told Harry that Nick bares a striking resemblance to the putative father, George Doe.
 12 Taking the well-pleaded allegations of fact and reasonable inference therefrom, we find that the allegations of fact, if ultimately proved by Harry, would entitle Harry to relief pursuant to section 2-1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2-1401). Harry's allegations of fact concerning Bobette's knowledge of Nick's true parentage, and Harry's reasonable reliance on Bobette's representations that a child born during Harry and Bobette's marriage was the biological son of Harry, would support a finding that Harry was not at fault for failing to discover and present this claim in the prior proceeding. (See Malek v. Lederle Laboratories (1987), 152 Ill. App.3d 493, 504 N.E.2d 893 (whether a party against whom section 2-1401 relief is sought fraudulently or intentionally concealed documents or information in prior actions is not a separate requirement of a petition under section 2-1401, but is part of the analysis in determining whether petitioner exercised due diligence in discovering and presenting grounds for relief under section 2-1401).) Nor, can we say that as a matter of law Harry's filing of his petition six months after Bobette first told him he was not the biological father of Nick establishes a lack of diligence in presenting his petition for relief under section 2-1401. (See Smith v. Airoom, Inc. (1986), 114 Ill.2d 209, 499 N.E.2d 1381 (petition to vacate is addressed to equitable powers of court, and a judgment may be vacated even though the requirement of due diligence has not been met). Compare Bruni v. Department of Registration & Education (1972), 8 Ill. App.3d 321, 324, 290 N.E.2d 295 (trial court did not abuse discretion in allowing petition to vacate dismissal filed six months after party learned of order of dismissal); Reuben H. Donnelly Corp. v. Thomas (1979), 79 Ill. App.3d 726, 730, 398 N.E.2d 972 (trial court did not abuse discretion in granting petition to vacate although filed one year after petitioner knew of judgment).) Finally, had the trial court known that Harry was not the biological father of *731 Nick, a fact we reiterate has not yet been proved, the trial court would not have entered the prior judgment in that the trial court would not have been authorized to order Harry, as the husband of Bobette, to support a child of Bobette which the court knew was not the biological child of Harry. (See In re Marriage of Watling (1989), 183 Ill. App.3d 18, 22, 538 N.E.2d 1274 (trial court lacked authority to order husband to pay temporary child support to wife for a child found not to be the biological child of the husband).) Since the factual allegations of Harry's petition, taken as true, would support a finding of diligence and of a meritorious claim or defense, the trial court erred in dismissing Harry's petition as legally insufficient. See Ostendorf v. International Harvester Co. (1982), 89 Ill.2d 273, 433 N.E.2d 253.
Next, we address respondent's contention that the trial court abused its discretion in refusing to grant respondent's motion for blood tests and his request that we direct the trial court to order blood tests in order to establish the existence or nonexistence of a parent-child relationship as part of Harry's attempts to obtain relief under his section 2-1401 petition. Harry argues that since Bobette refused to respond to the allegations contained in Harry's petition, she admitted all well-pleaded facts of Harry's section 2-1401 petition, and, therefore, Harry was entitled to an order of the trial court for blood tests to determine whether Harry was the biological father of Nick.
 13, 14 A section 2-1401 petition to vacate a judgment is addressed to the equitable powers of the court. (Campbell v. Kaczmarek (1976), 39 Ill. App.3d 465, 350 N.E.2d 97.) The section 2-1401 procedure has been provided as a means to allow trial courts to exercise their equitable powers to grant relief and prevent injustice. (Malek v. Lederle Laboratories (1987), 152 Ill. App.3d 493, 504 N.E.2d 893.) Harry is correct in his assertion that where a party fails to respond or otherwise answer to a petitioner's allegations of fact in a petition for relief under section 2-1401, such a failure admits as true those facts well pleaded. Campbell v. Kaczmarek (1976), 39 Ill. App.3d 465, 350 N.E.2d 97.
 15 Further, Harry was also correct in seeking a blood test at that point of the trial court proceedings in that, even though Bobette's failure to respond admitted the well-pleaded facts of Harry's petition, such facts do not establish by a preponderance of the evidence Harry's right to relief under section 2-1401. Further, the key factual question inherent in Harry's section 2-1401 petition involves the issue of Nick's parentage. Section 9(a) of the Parentage Act provides, *732 in relevant part, "[i]n any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." (Ill. Rev. Stat. 1987, ch. 40, par. 2509(a).) Therefore, we must look to the Parentage Act to see how its provisions affect Harry's attempts to vacate a prior judgment of dissolution and its related support provisions under section 2-1401 of the Code where Harry's section 2-1401 petition raises the issue of Nick's parentage. Cf. In re Marriage of Ingram (1988), 176 Ill. App.3d 413, 417, 531 N.E.2d 97 (section 9(a) of Parentage Act required application of Parentage Act's statute of limitations to wife's attempts to raise parentage issue in custody dispute which arose during dissolution of marriage proceedings).
 16-18 Section 5 of the Parentage Act creates a presumption that a man is the natural father of a child if the child's natural mother is married to the man at the time the child is born. (Ill. Rev. Stat. 1987, ch. 40, par. 2505(a)(1).) This presumption can be rebutted only by clear and convincing evidence. (Ill. Rev. Stat. 1987, ch. 40, par. 2505(b).) Therefore, before Harry can obtain the relief he seeks, as part of his proof under his section 2-1401 petition, Harry must rebut by clear and convincing evidence the presumption that he is the natural father of Nick. Section 11 of the Parentage Act authorizes and sets guidelines for the taking of blood tests, interpretation by experts of the test results, and use of test results and expert opinions in court proceedings where parentage is at issue. (Ill. Rev. Stat. 1987, ch. 40, par. 2511.) Where the test results and the experts' opinions support a trial court's finding excluding paternity, the presumption of section 5 of the Parentage Act (Ill. Rev. Stat. 1987, ch. 40, par. 2505) is rebutted. (Ill. Rev. Stat. 1987, ch. 40, par. 2511(f).) Since Harry's section 2-1401 petition is to be treated as any other civil complaint (Ostendorf v. International Harvester Co. (1982), 89 Ill.2d 273, 433 N.E.2d 253), orders for blood tests, like any other orders of discovery, to the extent necessary and otherwise appropriate to the issues relevant to a petition for relief under section 2-1401 are properly left to the trial court's discretion. (People v. B.R. MacKay & Sons, Inc. (1986), 141 Ill. App.3d 137, 490 N.E.2d 74; Lubbers v. Norfolk & Western Ry. Co. (1986), 147 Ill. App.3d 501, 498 N.E.2d 357; cf. Smith v. Airoom, Inc. (1986), 114 Ill.2d 209, 220-21, 499 N.E.2d 1381 (where facts sufficient to support relief pursuant to section 2-1401 petition are disputed, a full and fair evidentiary hearing is required to be held).) The trial court has the discretion to order blood tests under Supreme Court Rule 215(a) (107 Ill.2d R. 215(a)), as part of discovery, where parentage is at issue. (People ex rel. Aldworth v. Dutkanych (1986), 112 Ill.2d 505, 493 N.E.2d 1037.) If the allegations of Harry's *733 petition are found to be true, it would be an abuse of discretion to deny a request for blood tests to aid in Harry's attempts to establish whether he is the natural father of Nick and whether he should be granted relief as requested in his section 2-1401 petition. (See People v. B.R. MacKay & Sons, Inc. (1986), 141 Ill. App.3d 137, 490 N.E.2d 74 (where petitioner makes prima facie showing that judgment was fraudulently obtained, petitioner is entitled to limited discovery in connection with its petition to vacate the judgment).) However, we decline to direct the trial court to order blood tests at this stage.
 19 If the allegations of Harry's petition are true, and the blood test results establish that Harry is not the biological father of Nick, Nick stands to lose the financial support of Harry. The outcome of Harry's section 2-1401 petition will directly affect interests of the minor child, Nick, in visitation with and financial support from Harry. (See Ill. Rev. Stat. 1987, ch. 40, par. 2501.1 ("Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act").) Where a trial court has notice that a minor's interests are not properly represented, it is the duty of the trial court to appoint a guardian ad litem to safeguard and protect those interests. (McDonald v. McGowan (1987), 163 Ill. App.3d 697, 516 N.E.2d 934.) In light of the failure of the mother, Bobette, to file responsive pleadings in the trial court or a responsive brief in this court, serious questions arise as to whether Nick's interests may require protection in the trial court proceedings by appointment of a guardian ad litem. See Majidi v. Palmer (1988), 175 Ill. App.3d 679, 685, 530 N.E.2d 66 (where putative father filed petition seeking to establish paternity and visitation rights and mother moved to dismiss, mother and minor child's interests were in potential conflict, and court was required to appoint guardian ad litem); Miller v. Miller (1987), 163 Ill. App.3d 602, 609, 516 N.E.2d 837 (conflict of interests between minor and minor's parents in divorce proceedings as to matters of custody, visitation and support may require appointment of guardian ad litem to protect minor's interests).
 20 Therefore, we reverse the trial court's dismissal of respondent's section 2-1401 petition and remand for further proceedings. On remand, the trial court shall appoint a guardian ad litem for the minor, Nick. The guardian ad litem will represent the minor at a hearing in the trial court to determine, in light of the failure of the mother, Bobette, to respond or otherwise contest Harry's section 2-1401 petition, whether the minor's interests are being adequately protected at the section 2-1401 proceedings to vacate the judgment of dissolution. If the trial court determines that the minor's interests *734 have not been adequately represented in the section 2-1401 proceedings, it shall allow the guardian ad litem to file responsive pleadings and proceed with a determination of Harry's section 2-1401 petition anew. If the trial court determines that the minor's interests have been adequately represented, then the trial court shall proceed to order blood tests and proceed to a determination of whether to grant the relief requested in Harry's section 2-1401 petition.
Reversed and remanded with directions.
REINHARD and WOODWARD, JJ., concur.