*In re* MARRIAGE OF BECKI L. KLEBS, f/k/a Becki L. Trzoski, Petitioner-Appellant, and JOHN W. TRZOSKI, Respondent-Appellee.

First District (1st Division)   No. 1—88—0827

Opinion filed March 26, 1990.

474

John M. King, of Calumet City, for appellant.

Law Offices of Darryl R. Lem, of Calumet City (Darryl R. Lem and Robert C. Collins, Jr., of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

On January 10, 1986, Becki L. Klebs, formerly known as Becki L. Trzoski (petitioner), filed a motion pursuant to section 2—1401 of the Illinois Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), requesting that the court vacate portions of the judgment of dissolution of marriage, which was granted to the parties on July 24, 1985, and wherein it established that Kristin Nicole Trzoski was born to the marriage. Petitioner asked that the court determine the paternity of Kristin and, upon a determination adverse to John W. Trzoski (respondent), award petitioner sole care and custody of Kristin so that James A. Klebs, petitioner's current husband and the alleged natural father of Kristin, might institute adoption proceedings.

After an evidentiary hearing was held, the circuit court determined that respondent was not, and Klebs was, the biological father of Kristin. However, the court refused to vacate the portions of the judgment for dissolution of marriage which granted petitioner and respondent joint custody and awarded physical custody of Kristin to respondent. The circuit court found that the best interests of the child mandated that the status quo be maintained. Petitioner appeals, contending that the trial court's determination that respondent was not Kristin's biological father required that the issue of custody be decided de novo. Petitioner also contends that the court should have applied the "compelling reason" standard rather than the "best interest" standard when determining what custody provisions were appropriate.

Respondent, on the other hand, contends that the trial court erred by failing to dismiss the petition and by allowing paternity to be established contrary to the judgment of dissolution of marriage. Alternatively, respondent asks this court to adopt the doctrine of "equitable parent" or "psychological parent" and affirm the judgment of the trial court, finding that the award of joint custody while maintaining Kristin's physical residence with him was proper and in the best interest of Kristin.

For reasons we shall state below, we reverse the judgment of the trial court and reinstate the order entered upon the dissolution of marriage judgment.

The record shows that Becki L. Klebs (petitioner) and John W. Trzoski (respondent) were married on September 14, 1979. On March 27, 1982, petitioner gave birth to a daughter, Kristin Nicole Trzoski. On August 14, 1983, when Kristin was nearly 1½ years old, petitioner separated from respondent and left Kristin in the care and custody of respondent. Petitioner filed for dissolution of marriage on August 24, 1983, and upon petitioner's request for temporary relief, an agreed order was entered on October 19, 1983. This order provided that Kristin would remain in the custody of respondent but that petitioner would be granted liberal visitation.

The issue of Kristin's custody was placed on the court's contested custody calendar, and in June 1984, the court ordered that both parties be evaluated by the Psychiatric Institute of Cook County and investigated by the Department of Social Services. The reports and findings of these facilities are not part of the record. However, on July 11, 1985, the court entered an agreed order which granted the parties joint custody of Kristin and maintained her physical residence with respondent. On July 24, 1985, a judgment for dissolution of marriage was issued. It stated that Kristin had been born to the marriage and incorporated the agreed order for her joint custody. Soon after the marital dissolution judgment was entered, petitioner married James Klebs.

It was not until January 10, 1986, that petitioner raised the issue of Kristin's paternity. In a petition brought pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), petitioner alleged that respondent was not the biological father of Kristin and asked the court to determine the paternity of Kristin. Petitioner requested that the court vacate the portions of the judgment for dissolution of marriage wherein it stated that respondent was the father of Kristin and awarded him joint legal custody as well as physical custody of Kristin. In support of her request petitioner alleged that she,

Kristin and James Klebs had undergone Level III paternity determination blood tests on December 19, 1985, which established that James Klebs had a 99.9855% relative chance of paternity with respect to Kristin.

Respondent answered this petition by filing a motion to dismiss on the ground that it failed to allege sufficient facts upon which relief could be sought. Respondent denied the allegations that he was not the biological father of Kristin and asserted that petitioner should be estopped from attacking the finding of paternity in the judgment for the dissolution of marriage. Respondent argued that the presumption of legitimacy and his paternity were not subject to attack at this date because petitioner failed to exercise due diligence in raising the issue.

On February 19, 1986, upon petitioner's motion to compel discovery, respondent was ordered to submit to Level III paternity determination blood tests. Accordingly, respondent submitted to the testing, which indicated that he had a 0% relative chance of paternity with respect to Kristin. Despite the results of the court-ordered blood tests, which respondent claimed to be wrongfully obtained, respondent continued to assert his rights as Kristin's parent. In a memorandum of law to the trial court respondent again argued that petitioner should be estopped from raising the issue of paternity. In the event that the court considered the petition, respondent argued that the trial court should view the petition as a request to modify custody pursuant to section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 610), and deny relief upon a finding that no change in circumstances had occurred that would justify the relief sought.

Conversely, petitioner argued that the trial court should correct the error regarding Kristin's paternity upon a finding that there had been a "mutual mistake" of the parties at the time of the dissolution of marriage. Petitioner further argued that, upon a determination that respondent was neither the biological nor the adoptive father of Kristin, respondent should be treated as a third party whose right to seek custody or visitation must be predicated upon a petition pursuant to section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). Furthermore, petitioner argued that respondent should be required to show a "compelling reason" why custody should be awarded to him since there exists a legal presumption favoring custody with a natural parent.

At an evidentiary hearing on May 18, 1987, both parties presented testimony to the court. Through their testimony it was established that Kristin, then five years old, had lived with respondent con-

tinuously since birth but that there was adherence to a comprehensive schedule which granted petitioner liberal visitation. Respondent testified that when he worked or was unable to be at home, Kristin was cared for by his mother, Shirley Trzoski, and that this arrangement had been established prior to the parties' separation and divorce.

Perhaps the most significant testimony came from petitioner, who testified that she first began to suspect that respondent was not Kristin's father when Kristin was about 1½ years old. Petitioner claimed that at that age Kristin began to display some physical resemblance to petitioner's new husband, James Klebs. Although petitioner admitted that she suspected Kristin's paternity before she obtained her divorce, in fact, nearly two years before the judgment for dissolution of marriage was entered, she claimed that she allowed Kristin to remain in respondent's physical custody and agreed to the final order which granted the parties joint custody and maintained Kristin's physical residence with respondent, because she was unsure about Kristin's paternity. Petitioner admitted that she never notified respondent of her suspicions or voiced them to the psychologist or social workers who investigated the case for the purpose of making custody recommendations. Furthermore, petitioner did not act upon her suspicions regarding Kristin's paternity until December 1985, well after the agreed order regarding Kristin's custody was entered and the judgment of dissolution was issued. In addition, petitioner admitted to perjuring herself in her February 26, 1985, deposition at which she testified that she had not been sexually intimate with James Klebs prior to her August 1983 separation from respondent.

At a subsequent hearing the trial court granted petitioner's request to vacate the portion of the judgment for dissolution of marriage regarding Kristin's paternity. The trial court held that it was in Kristin's best interest to recognize that she had two fathers. The court held that James Klebs was the biological father of Kristin but that respondent was the "equitable" or "psychological" father of Kristin. However, the court denied petitioner's request to vacate the original custody order which granted the parties joint custody and maintained Kristin's physical residence with respondent. An order to this effect was issued on October 6, 1987, and petitioner's motion for rehearing was denied on March 1, 1988. Petitioner now brings this appeal.

Petitioner, relying heavily on *In re Adoption of Weller* (1977), 47 Ill. App. 3d 492, 362 N.E.2d 73, contends that because the trial court determined that respondent was not the biological father of Kristin, he had no parental status. This is because a court cannot "create a

parent-child relationship out of thin air." Petitioner also argues that there is a "strong presumption" in favor of awarding custody to a natural parent so that respondent, a third party, would need to show "compelling reason" to overcome this presumption. Concluding that respondent showed no such compelling reason, petitioner argues that the trial court erred by maintaining Kristin's custody with respondent.

Respondent, on the other hand, continues to maintain that petitioner was legally barred from bringing her motion to redetermine paternity because she failed to show due diligence in bringing her claim. We must agree with respondent.

Our review of the record convinces us that petitioner was not entitled to relief under section 2—1401 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) and that the trial court erred by ordering respondent to submit to blood tests and by failing to dismiss petitioner's request because (1) petitioner was barred from bringing her cause of action by the doctrines of *res judicata* and collateral estoppel; (2) petitioner failed to show that she exercised due diligence in bringing the issue of Kristin's parentage to the court's attention; and (3) petitioner was barred from bringing her cause of action by the provisions of the Illinois Parentage Act of 1984 and the statute of limitations therein.

■■ When a party files a motion pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), that party seeks to vacate a prior final judgment, or portions thereof, based upon representations that he now possesses certain facts or matters which were unknown at the time the judgment was entered, and, if known, would have affected or altered the judgment that was entered. (*In re Marriage of Tzoumas* (1989), 187 Ill. App. 3d 723, 728-29, 543 N.E.2d 1093, 1096.) The petition, however, is not a continuation of the previous action, but a new action, subject to the rules of civil practice and is to be considered as any other civil complaint. (*Tzoumas*, 187 Ill. App. 3d at 729, 543 N.E.2d at 1096.) Because a section 2—1401 petition is a new action, it must be determined whether the doctrines of collateral estoppel and *res judicata* apply.

■■ ■ The doctrine of collateral estoppel provides that "an issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties or their privies in the same or a different cause of action." (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 496, 546 N.E.2d 609, 611.) The doctrine of *res judicata* provides that " 'a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " (*Sim-*

cox, 131 Ill. 2d at 497, 546 N.E.2d at 611-12, quoting *Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 446, 539 N.E.2d 1216, 1220.) It has been held that paternity is an issue that is raised by dissolution proceedings (*Simcox*, 131 Ill. 2d at 496, 546 N.E.2d at 611), so that a finding of paternity in a dissolution decree is a final judgment rendered by a court of competent jurisdiction. (*In re Marriage of Emerson* (1983), 115 Ill. App. 3d 712, 717, 450 N.E.2d 987, 990; *Fohr v. Fohr* (1979), 75 Ill. App. 3d 575, 579, 394 N.E.2d 87, 90; *Sanders v. Sanders* (1977), 55 Ill. App. 3d 248, 251, 371 N.E.2d 121, 124; see also Annot., 78 A.L.R.3d 846 (1977).) Thus, any party or privy to the dissolution proceedings may be barred from attempting to relitigate the issue of parentage.

Certainly, the petitioner in this case was a party to the dissolution proceedings. Therefore, she may be estopped from raising the issue of Kristin's parentage and the finding of paternity, as set forth in the dissolution decree, may be held *res judicata* for the purposes of her post-decree petition.

Notwithstanding the bar to an action that may result from application of the doctrines of collateral estoppel and *res judicata*, a party may still seek relief from a final judgment by appealing to the equitable power of the court. By filing a section 2—1401 petition, a party asks that the court exercise its equitable powers to correct a mistake and prevent injustice. (*Tzoumas*, 187 Ill. App. 3d at 731, 543 N.E.2d at 1097-98.) To prevail, however, the party bringing the petition must show by a preponderance of the evidence that (1) a meritorious claim or defense exists; (2) the petitioner exercised due diligence in discovering the defense or claim in the original action; (3) despite such diligence and through no fault on the part of petitioner, the error of fact or valid claim or defense was not made apparent to the trial court at the time of the original action; and (4) petitioner exercised due diligence in filing the section 2—1401 petition. (*In re Marriage of Duffey* (1988), 168 Ill. App. 3d 1086, 1089, 523 N.E.2d 371, 373.) Employing this standard, we find that petitioner was not entitled to relief and that the trial court abused its discretion by failing to dismiss petitioner's section 2—1401 petition.

Based upon our review of the record, we are convinced that petitioner failed to show by a preponderance of the evidence that she exercised due diligence in discovering the facts that she now believes entitle her to relief. As stated in *In re Marriage of Emerson* (1983), 115 Ill. App. 3d 712, 716, 450 N.E.2d 987, 991, it is insufficient for a party to come into court and simply assert that the judgment was premised upon false facts. The party must show that such facts could

not reasonably have been disclosed at or prior to the entry of judgment. A section 2—1401 petition is not intended to relieve a party from the consequences of his own mistake or serve as a remedy for a belated change of mind. *Emerson*, 115 Ill. App. 3d at 717, 450 N.E.2d at 991.

█ In the instant case petitioner's testimony at the hearing revealed that she suspected that respondent was not Kristin's biological father prior to the court's final judgment. In fact, petitioner testified that she suspected respondent's lack of paternity even before she filed her petition for dissolution of marriage in 1983. Still, petitioner never acted upon these suspicions during the nearly two years that passed before the final judgment was entered in 1985. In addition, petitioner never revealed her suspicions to the professionals who evaluated the parties for the court in an effort to make custody recommendations. We find, therefore, that petitioner failed to demonstrate due diligence in raising the issue. Thus, the trial court should not have considered petitioner's section 2—1401 request. See *Kaput v. Hoey* (1988), 124 Ill. 2d 370, 530 N.E.2d 230.

Petitioner was in the best position to know those facts that would lead one to suspect that Kristin's paternity was other than what had been represented. Furthermore, petitioner testified at the dissolution proceedings that she had not been sexually intimate with anyone other than respondent prior to her legal separation. This testimony was certainly false and a fraud on the court, calculated to obtain a more favorable judgment. Under such circumstances petitioner should not be allowed to invoke the equitable powers of the court. *Fohr*, 75 Ill. App. 3d at 579, 394 N.E.2d at 90.

██ █ As further support for our decision, we find that the Illinois Parentage Act of 1984 (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 2501 *et seq.*) is applicable to the present case and that the provisions of the Act bar petitioner's cause of action. Section 9(a) of the Act states, in pertinent part, that "[i]n any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." (Ill. Rev. Stat. 1985, ch. 40, par. 2509(a).) Petitioner's cause of action clearly raises the issue of Kristin's parentage. Thus, despite the fact that petitioner brought her action pursuant to section 2—1401 of the Code of Civil Procedure, she may not circumvent the public policy and directives set forth in the Act.

█ The Act confers upon a man the presumption of paternity if he was married to the mother of the child at the time the child was born or conceived, or if he marries the child's mother after the child's birth and consents to being named as the child's father on the birth

certificate. This is a legal presumption that can only be rebutted by clear and convincing evidence. (Ill. Rev. Stat. 1985, ch. 40, par. 2505.) Notwithstanding this presumption, the statute affords certain persons the right to bring an action to determine the existence and/or nonexistence of a father and child relationship. If the presumption of paternity, as set forth in section 5 of the Act, is sufficiently rebutted, then paternity of the child by another man may be established if that man has been made a party to the proceedings. (Ill. Rev. Stat. 1985, ch. 40, par. 2507.) The legislature has seen fit to limit the ability of certain persons to bring an action to declare the existence or nonexistence of a parent-child relationship. Specifically, a petition to declare the nonexistence of a parent-child relationship is barred if brought by someone other than the child more than two years after that party "obtains knowledge of relevant facts." Ill. Rev. Stat. 1985, ch. 40, par. 2508(a)(3).

■■■ In light of the statutory provisions of the Act, petitioner's cause of action, although entitled a section 2—1401 petition, should be construed as an action to declare the nonexistence of a parent-child relationship. As such it must conform to the provisions and directives of the Act. We find that it does not.

Petitioner clearly has not brought her action within the limitations period set forth in section 8(a)(3) of the Act. (See *In re Marriage of Ingram* (1988), 176 Ill. App. 3d 413, 531 N.E.2d 97.) Surely, petitioner possessed "relevant facts" from which she knew or could have known that respondent was not Kristin's father. Her failure to act upon these known facts to verify suspicions regarding Kristin's paternity bars the present action. We refuse to construe the blood tests, which confirmed petitioner's suspicions as to Kristin's paternity, as the "knowledge of relevant facts" which started the running of the limitations period.

■■■ Furthermore, we note that the trial court erred additionally by establishing the paternity of James Klebs since he was not a party to the proceedings before the court. Ill. Rev. Stat. 1985, ch. 40, par. 2507(b).

■■■ ■ Finally, although we acknowledge that the limiting provisions set forth in the Act would not bar an action by or on behalf of the child, we decline to interpret petitioner's section 2—1401 petition as an action brought on Kristin's behalf. As in *Ingram*, petitioner's interests are not synonymous with the child's interests since petitioner seeks to deprive Kristin of the emotional and financial support of the man she has known, heretofor, as her father. When a child's interests are potentially in conflict with the parent's or not properly repre-

sented, it is the duty of the trial court to appoint a guardian *ad litem* to safeguard and protect the interests of the child. In this case no guardian *ad litem* was appointed to represent Kristin. Therefore, even if we were inclined to construe the petition as one properly before the trial court, we would find that its determination of the best interests of the child was an abuse of discretion since Kristin's interests were not adequately represented.

For the reasons stated above, we reverse the judgment of the circuit court. We vacate the order establishing the paternity of James Klebs and reinstate the prior dissolution decree and all provisions therein.

Reversed.

CAMPBELL and O'CONNOR, JJ., concur.