# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re G.M.*, 2012 IL App (2d) 110370

---

| | |
|---|---|
| Appellate Court Caption | *In re* G.M., a Minor (A.M., Petitioner-Appellant, v. E.M.B. and F.J.M., Respondents-Appellees). |
| District & No. | Second District<br>Docket No. 2-11-0370 |
| Filed<br>Modified on denial<br>of rehearing | March 12, 2012<br><br>September 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a paternity petition, the trial court erred dismissing the petition on the ground that it was barred by the two-year statute of limitations in section 8(a)(3) of the Illinois Parentage Act of 1984 applicable to actions seeking to establish the nonexistence of a parent-child relationship, since the 20-year period in section 8(a)(1), which is applicable to actions seeking to establish the existence of a parent-child relationship, applied in petitioner's case. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 09-F-49; the Hon. Brendan A. Maher, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on          Robert C. Pottinger and Jody L. Beilke, both of Barrick, Switzer, Long,
Appeal              Balsley & Evera, LLP, of Rockford, for appellant.


                    James T. Zuba, of Zuba & Associates, of Rockford, for appellee E(O (D0


                    Richard M. Butera and Lucia Butera, both of Butera Law Offices, P.C.,
                    of Rockford, for appellee F(L(O 0

Panel               JUSTICE HUDSON delivered the judgment of the court, with opinion.
                    Justices Zenoff and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1      Petitioner, A.M., appeals the dismissal of her petition to establish the paternity of her son, G.M. She contends that the trial court erred in concluding that the petition was barred by a two-year statute of limitations. We reverse and remand.

¶ 2      We briefly summarize the facts as alleged in the petition. Petitioner was married to respondent F.J.M., but theirs was an "open" marriage in which they engaged in sex with other couples. During November 2006, petitioner engaged in sex with her husband. Also around that time, petitioner and her husband met respondent E.M.B. and his wife, S.B. The couples met at E.M.B.'s home around Thanksgiving 2006. On that occasion, petitioner had sex with E.M.B., although she did not think that he ejaculated inside her.

¶ 3      In January 2007, petitioner discovered that she was pregnant. At a Super Bowl party in February 2007, petitioner announced that she was 11 weeks pregnant. Petitioner gave birth to G.M. on July 31, 2007. At first the child resembled F.J.M., but, as he grew older, he began to resemble E.M.B.

¶ 4      On May 19, 2009, petitioner filed a petition to determine a parent and child relationship. The petition named E.M.B. as the father. It named F.J.M. as a respondent only because he is G.M.'s putative father by virtue of his marriage to petitioner.

¶ 5      F.J.M. moved to dismiss the petition, alleging that it was barred by the two-year limitations period in section 8(a)(3) of the Illinois Parentage Act of 1984 (the Act) (750 ILCS 45/8(a)(3) (West 2008)). That section provides that an action to declare the nonexistence of a parent-child relationship must be filed within two years after the petitioner learns "relevant facts." 750 ILCS 45/8(a)(3) (West 2008). F.J.M.'s motion argued that petitioner "knew" sometime in early 2007 that E.M.B. might be G.M.'s father. The motion included e-mails between petitioner and E.M.B. discussing whether he was the child's father.

¶ 6      The trial court found that, before E.M.B. could be declared the father, petitioner first had

to establish that her husband was not in fact the father. Thus, the two-year statute of limitations governing actions to establish the nonexistence of a parent-child relationship applied. The court held an evidentiary hearing to establish when petitioner learned the "relevant facts." At the hearing, petitioner took the position that she did not know the relevant facts until April 2008, when she performed a DNA test, or, at the earliest, late 2007, when G.M. first began to resemble E.M.B. The trial court granted the motion to dismiss, and petitioner appeals.

¶ 7    Petitioner contends that the trial court erred by dismissing her petition as barred by the statute of limitations. We agree that the trial court improperly dismissed the petition, but not for the reasons petitioner asserts. See *Halpin v. Schultz*, 234 Ill. 2d 381, 390 (2009) (rule that points not argued in appellant's brief are forfeited is an admonition to the parties rather than a limitation on a court of review; reviewing courts may look beyond considerations of forfeiture in order to maintain a sound and uniform body of precedent or where the interests of justice so require).

¶ 8    To explain our conclusion, we first briefly summarize the Act's relevant provisions. Section 7 of the Act essentially creates two distinct causes of action. It provides for an "action to determine the existence of [a] father and child relationship" (750 ILCS 45/7(a) (West 2008)) as well as an "action to declare the non-existence of [a] parent and child relationship" (750 ILCS 45/7(b) (West 2008)). Section 8 of the Act provides radically different limitations periods for the two types of actions. An action to declare the existence of a father and child relationship, with exceptions not relevant here, "shall be barred if brought later than 2 years after the child reaches the age of majority." 750 ILCS 45/8(a)(1) (West 2008). However, an action to declare the nonexistence of a parent and child relationship "shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts." 750 ILCS 45/8(a)(3) (West 2008). Thus, a paternity action under section 7(a) effectively has a 20-year limitations period: a party can bring an action any time up to 2 years after the minor reaches the age of majority. However, a "nonpaternity" action under section 7(b) must be brought within two years after the petitioner learns the "relevant facts."

¶ 9    The parties and the trial court have proceeded on the assumption that the petition was a section 7(b) petition to declare the nonexistence of a parent and child relationship, subject to the two-year limitations period. The parties' appellate arguments are devoted to the question of when petitioner knew sufficient "relevant facts" to conclude that E.M.B. was G.M.'s father. However, as we explain below, the petition was one to establish a father-child relationship, and it was therefore subject to the 20-year limitations period of section 8(a)(1).

¶ 10    The trial court dismissed the action pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2010)). We review *de novo* the dismissal of an action pursuant to section 2-619. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 681 (2010).

¶ 11    Resolving this issue requires us to construe section 8 of the Act. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Blair*, 215 Ill. 2d 427, 442 (2005). The best indication of the legislature's intent is the

language of the statute, given its plain and ordinary meaning. *Id.* at 442-43. The construction of a statute, too, is a legal question that is also appropriate for *de novo* review. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010).

¶ 12    As noted, the Act's limitations provision distinguishes between actions to declare the existence of a father-child relationship and actions to declare the nonexistence of a parent-child relationship. The trial court apparently took the view that this action was of the latter type. We note, however, that the petition was labeled as one to establish a parent-child relationship. While this is not dispositive (see *Padilla v. Vazquez*, 223 Ill. App. 3d 1018, 1023 (1991) (in analyzing a pleading, reviewing court will look to its substance, not its label)), it is clear that the petition substantively sought to have E.M.B. declared the father. The petition expressly requested that relief and claimed that F.J.M. was named "only as the presumed father." It is true that the prayer for relief also asked the court to declare "the non-existence of a parent-child relationship" between F.J.M. and G.M. However, this fact alone did not convert the petition into a section 7(b) "nonpaternity" action. Obviously, a declaration that one person is a child's father necessarily implies that all others are not the child's father. To hold that this turns a section 7(a) paternity action into a section 7(b) nonpaternity action would effectively read section 7(a)–and its more liberal limitations period–out of the statute. This clearly was not the legislature's intention, or it would not have provided for the longer limitations period in section 7(a) in the first place.

¶ 13    The trial court in this case apparently believed that, where there is a putative father, it is first necessary to disestablish his parentage before pursuing a parentage action against the true biological father. However, nothing in either the plain language of the statute or the case law supports this. When asked at oral argument, none of the parties was able to cite a case or a specific provision of the statute supporting this reading of it. The closest thing we can find is section 5 of the Act, which establishes a presumption of paternity based on certain factors, including a man's marriage to the child's natural mother. 750 ILCS 45/5(a)(1) (West 2008). That section further provides that a presumption under section 5(a)(1) can be overcome only by clear and convincing evidence. 750 ILCS 45/5(b) (West 2008). However, this fixes only the evidentiary burden that a party must meet, not the timeframe in which he or she must do so.

¶ 14    Very nearly on point with this case is *In re Marriage of Adams*, 297 Ill. App. 3d 156 (1998). There, the mother's husband had had a vasectomy. The mother told her husband that she conceived two children by artificial insemination. In fact, the children were products of extramarital affairs with two different men. The husband eventually learned the truth and filed for dissolution. In the dissolution proceeding, he asked to have his support obligation terminated, and the mother responded by filing paternity actions against the biological fathers. One father apparently settled. The trial court terminated the husband's parental obligations, declared the other man the father of his child, and ordered him to pay support.

¶ 15    The biological father appealed, arguing, *inter alia*, that the two-year limitations period of section 8(a)(3) had expired. The Fourth District rejected this argument, stating:

"[The mother] filed an action to prove the *existence* of a parent and child relationship. Implicit in every petition to prove the existence of that relationship under section 8(a)(1)

is proof of the *nonexistence* of the relationship to everyone else. [The father's] interpretation would thus subject all paternity petitions to the limitations period provided in section 8(a)(3), rendering the limitations period in section 8(a)(1) meaningless. Clearly, the legislature could not have intended such a result." (Emphases in original.) *Id.* at 160.

¶ 16    Respondents cite *In re Marriage of Klebs*, 196 Ill. App. 3d 472 (1990). There, a husband and wife had their marriage dissolved. During the marriage, the wife had given birth to a daughter. The dissolution judgment found that the daughter was a child of the marriage and awarded the parties joint custody. The wife subsequently married James Klebs.

¶ 17    Six months after the judgment was entered, the wife filed a section 2-1401 petition (Ill. Rev. Stat. 1985, ch. 110, ¶ 2-1401 (now 735 ILCS 5/2-1401 (West 2010))), alleging that Klebs was actually the child's father. The petition sought to vacate the portion of the judgment concerning the child's paternity. The trial court granted the section 2-1401 petition and vacated the portion of the judgment concerning the child's paternity, but refused to vacate the joint custody provision. *Klebs*, 196 Ill. App. 3d at 478. The appellate court reversed.

¶ 18    The court first held that the trial court should not have granted the section 2-1401 petition because it was clear that the wife at least suspected before the judgment was entered that Klebs was the father, and her testimony in the dissolution proceedings that she had not been sexually intimate with anyone other than her husband during the relevant period was a fraud on the trial court. *Id.* at 481. The court further noted that the petition was essentially one to establish the nonexistence of a parent-child relationship and, as such, was barred by the two-year statute of limitations. *Id.* at 482 (citing Ill. Rev. Stat. 1985, ch. 40, ¶ 2508(a)(3)).

¶ 19    The portion of the opinion supporting respondents' position is arguably *dicta*. The court's primary holding was that the trial court should not have entertained the section 2-1401 petition because it was based on the petitioner's own fraudulent conduct. In any event, the court's further assertion that the two-year statute of limitations barred the petition does not help respondents, either. The petition clearly sought only a declaration that the petitioner's ex-husband was not the father. The petition sought no relief from Klebs, the biological father. Apparently, the petitioner wanted the court to vacate the parentage and custody findings in the previous judgment so that Klebs could adopt the child. As the petition in *Klebs* was clearly one to establish nonpaternity, that case is distinguishable.

¶ 20    E.M.B. has filed a petition for rehearing, in which he again argues that the 20-year limitations period applies only when there is no putative father. He contends that *Adams* is distinguishable because, there, the biological father attempted to raise the section 8(a)(3) limitations defense, while here it was raised by the putative father, to whom it properly belongs. Nevertheless, E.M.B. still fails to cite a case that affirmatively supports his position. Moreover, section 7(a) of the Act says that a mother may bring a paternity action "whether or not such a [paternal] relationship is already presumed." 750 ILCS 45/7(a) (West 2008). Thus, "[r]egardless of any legal presumptions of paternity, a [mother] alleging that [a man] is the father of a child may bring an action to determine a parent-child relationship. [Citation.] Those actions must be brought no later than two years after the child reaches the

age of majority." *J.S.A. v. M.H.*, 343 Ill. App. 3d 217, 220 (2003). In other words, section 7(a) permits such an action "regardless of any presumption of paternity by another man." *In re Paternity of an Unknown Minor*, 2011 IL App (1st) 102445, ¶ 11. Thus, section 7(a) confirms that an action to establish paternity may be brought without first disestablishing the paternity of a putative father. Such an action has a 20-year limitations period, even when there is a putative father whose paternity would naturally be disestablished, and even though an independent nonpaternity action would have been barred after 2 years.

¶ 21 A brief historical review of the Act and its underlying purposes reinforces our conclusion that the longer limitations period applies here. The present Act replaced the Paternity Act, which provided a two-year limitations period in which to file a paternity action. Ill. Rev. Stat. 1981, ch. 40, ¶ 1354. The present Act declares that "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents ***." 750 ILCS 45/1.1 (West 2010).

¶ 22 In *Klawitter v. Crawford*, 185 Ill. App. 3d 778 (1989), the court discussed the history and purposes of the Act, stating:

"Upon review of the legislative history of the Illinois Parentage Act of 1984, it appears that the Paternity Act *** was repealed in response to the United States Supreme Court's denunciation of a similar statute in Tennessee in which the statute was held to be unconstitutional because it denied equal protection to illegitimate children seeking support (*Pickett v. Brown*[, 462 U.S. 1 (1983)]), and [the] court's decision in *Jude v. Morrissey*[, 117 Ill. App. 3d 782 (1983)], which held that the two-year statute of limitations under the Illinois Paternity Act ***, which precluded the bringing of an action to establish paternity by anyone later than two years of the birth of the child, was similarly unconstitutional discrimination against illegitimate children." *Klawitter*, 185 Ill. App. 3d at 781-82.

The court went on to state:

"We also note that prior to passage of the Illinois Parentage Act of 1984, courts held that their main concern was to provide for the best interest of the child and his or her welfare in the same way the courts protect and adjudicate a dispute between the parents of a legitimate child. (*People ex rel. Elmore v. Elmore*[, 46 Ill. App. 3d 504, 506 (1977)].) This rationale formed the basis for the repeal of the Paternity Act *** and the enactment of the Illinois Parentage Act of 1984, which greatly expands the opportunities for an illegitimate child to seek the support of his or her parents." *Klawitter*, 185 Ill. App. 3d at 784.

¶ 23 *Klawitter* held that the limitations provision then in effect did not violate the biological father's right to equal protection. At that time, the Act provided that an action brought "by or on behalf of a child" was barred if brought later than two years after the child reached the age of majority. Ill. Rev. Stat. 1987, ch. 40, ¶ 2508(a)(1). An action "brought on behalf of any person other than the child" was barred if brought later than two years after the child's birth. Ill. Rev. Stat. 1987, ch. 40, ¶ 2508(a)(2). Finally, as now, an action to declare the nonexistence of a parent-child relationship was barred if brought later than two years after the petitioner obtained knowledge of "relevant facts." Ill. Rev. Stat. 1987, ch. 40,

¶ 2508(a)(3); see *Majidi v. Palmer*, 175 Ill. App. 3d 679, 682 (1988).

¶ 24        In 1995, the legislature amended the Act to provide a single limitations period applicable to actions to declare a father-child relationship, regardless of on whose behalf it is brought, while retaining the shorter limitations period applicable to actions to declare the nonexistence of a parent-child relationship.

¶ 25        Given the Act's purposes to avoid discrimination against children born out of wedlock and expand the opportunities of children to seek support from their parents, we cannot agree that the two-year limitations period applies here. We note that a contrary holding would mean that the actions of adults could cut off a child's right to establish a relationship with his or her biological father while the child is still an infant. This is not what the legislature intended.

¶ 26        We recognize that our reading of the statute might create a somewhat anomalous situation where a petitioner can pursue a paternity action against the biological father while the statute of limitations has expired on a putative father's right to file a nonpaternity action. The apparent policy reason for this dichotomy is to protect the minor's interests. It gives the minor (or a representative) two years after the minor attains majority to pursue a paternity action against his or her father while not allowing the minor to be "abandoned" by a putative father filing a nonpaternity action midway through the child's minority.

¶ 27        This safe-sided approach is particularly appropriate given the realities of modern society. It is not unusual for a child to have a paternal relationship with a biological father and one or more stepparents. Thus, that our reading of the statute could result in a child having a parental relationship with more than one father should not be a bar to the result in this case. Ultimately, of course, issues such as support and visitation will have to be determined according to a child's best interests. See 750 ILCS 45/14(a)(1) (West 2008).

¶ 28        In his petition for rehearing, E.M.B. assails the conclusion that potentially having a relationship with multiple father figures would not harm G.M. He contends that such a situation would be "confusing and disruptive" to G.M. and "would create a myriad of problems" with regard to custody, visitation, and child support. He cites *Michael H. v. Gerald D.*, 491 U.S. 110, 118-20 (1989), for the proposition that "California law, like nature itself, makes no provision for dual fatherhood," which can be "destructive of family integrity and privacy."

¶ 29        As noted, our function is to discern the legislative intent from the statutory language. Thus, to the extent that E.M.B. makes general policy arguments, they are best addressed to the legislature. To the extent that he makes specific arguments about the proceedings' effect on G.M., they are premature, as no evidence about his best interests has been introduced at this point in the proceedings. Again, the Act provides for a best-interests hearing (750 ILCS 45/14(a)(1) (West 2008)), and such questions can be addressed there.

¶ 30        As for *Michael H.*, the action by the biological father to establish a relationship with his daughter was clearly barred under California law, and the Court held merely that barring the action did not offend the due-process rights of either the biological father or the daughter. The Court noted the opinion of the daughter's guardian *ad litem* that a relationship with multiple fathers could have great psychological benefit, but held only that due process did

not require the state to provide for it. Thus, *Michael H.* does not support respondent's interpretation of the Act.

¶ 31    In conclusion, we express no opinion on any substantive issue. We hold only that the trial court erred by applying the 2-year limitations period of section 8(a)(3) rather than the 20-year limitations period of section 8(a)(1). The judgment of the circuit court of Boone County is reversed and the cause is remanded.

¶ 32    Reversed and remanded.