# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Putzler*, 2013 IL App (2d) 120551

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MARGUERITE PUTZLER, Petitioner-Appellee, and RONALD PUTZLER, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0551 |
| Filed | February 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from orders increasing respondent's child support obligation and awarding petitioner attorney fees in connection with two contempt petitions filed against respondent, the evidence of respondent's increased ability to pay and the children's increased needs supported the finding of a substantial change in circumstances that justified the modification, and although petitioner was employed by her counsel's law firm and was not burdened by the fees, the award was properly entered to sanction respondent and to compensate petitioner's counsel. |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, No. 04-D-39; the Hon. Ronald G. Matekaitis, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Steven A. Miner, of Barrington Hills, for appellant.

Charles E. Petersen, of Presbrey & Associates, P.C., of Aurora, for appellee.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Ronald Putzler, appeals two court orders: (1) a December 27, 2011, order increasing his monthly child support obligation from $2,500 to $3,703; and (2) an April 25, 2012, order awarding petitioner, Marguerite Putzler, $3,125 in attorney fees in connection with her successful pursuit of two contempt petitions against him. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND
¶ 3                                    A. Child Support
¶ 4    The parties divorced in 2005. Petitioner was granted residential custody of their two children, Dillon (born in 1995) and Cole (born in 1997). The dissolution judgment provided that respondent would pay child support to petitioner in the form of: (1) a lump sum of $511 per week (averaging $2,214 per month), based on respondent's net income of $95,000 per year; and (2) two-thirds of the cost of the children's extracurricular school expenses, extracurricular activities, and medical or dental costs not covered by insurance. In 2007, the parties agreed to increase the monthly amount of child support to $2,500, based on respondent's net income of $114,000 per year.

¶ 5    In June 2009, petitioner petitioned for an increase in child support. On January 31, 2011, a hearing commenced on the petition. Petitioner testified that she works full time as an office manager for Presbrey and Associates, P.C. (her attorney's law firm). Petitioner compared her 2006 affidavit of expenses, which was submitted to support the 2007 increase in monthly child support, to the affidavit she submitted to support her 2009 petition. Petitioner testified that, despite the 2007 increase in support, she was experiencing monthly cash shortfalls. She testified that many expenses had increased, including those for home repairs, utilities, auto insurance (because Dillon is driving on a permit), gas, and food. Petitioner explained that their home, a log-style house, requires more maintenance than other homes. Their front porch had to be repaired because it rotted, a new roof was installed because the old one was

leaking, and a water purifier was installed because the community water table was altered and became sulfuric. Plaintiff attached to her affidavit a list of additional extraordinary expenses related to the home since 2007.

¶ 6    Petitioner explained that, even where her estimates on the 2006 and 2009 financial affidavits appeared the same (for example, on both affidavits, she listed clothing expenses as $300), the percentage of those amounts that went to her decreased and the amount for the children increased. In addition, although gas costs for the home are the same on both affidavits, since 2007 plaintiff has shut off gas to an exterior structure on her property and now uses gas only for the residence (which reflects that gas prices had increased). Further, school tuition and expenses (calculators, lab fees, etc.) had increased, and via the dissolution judgment respondent was not required to directly contribute a percentage thereto. Petitioner explained that her gasoline expenses had increased because of traveling to and from the children's increased activities. In addition, although petitioner and her sons occasionally provided food for guests, food costs had increased (from $800 on the 2006 affidavit to $1,000 on the 2009 affidavit) primarily because, as petitioner explained, the 15- and 13-year-old boys now consumed more food than when they were younger.

¶ 7    Petitioner refinanced her home mortgage to lower her monthly payment, but, in doing so, she borrowed an extra $7,400 on that loan in order to pay off a home equity loan that was, per the dissolution judgment, respondent's responsibility to pay. According to petitioner, respondent had not reimbursed her that amount. Further, petitioner testified that she has incurred credit card debt (around $6,476) and makes monthly payments thereon, but that, overall, she has tried to pay down or eliminate that balance. Petitioner explained that on her Mastercard, she charged Christmas gifts, clothing, and other expenses related to the children; she also charged some airline tickets for herself and as a gift for her boyfriend. She opened a Discover card to pay for the water purification system, and she has credit cards for Kohl's and Menards.

¶ 8    Petitioner explained that she pays for the children's health insurance through work. She pays $683 per month (half of which is for the children). Petitioner explained that the health insurance expense is not reflected in her paycheck because it is a benefit she receives from her employment but that, if the children were not on her insurance, she would earn more money. For example, although in 2010 her paychecks reflected a higher gross income than in 2006 (*i.e.*, an increase from $3,544.86 to $4,166.66), petitioner believed that any pay increases she receives are stymied by the health insurance cost, such that her income would be higher if she did not carry the insurance. As to extracurricular expenses, petitioner disagreed that, per the dissolution judgment, if she paid $150 per month, for example, respondent necessarily paid $300. She stated that "it would depend on the activity," and, although she could not recall with specificity, she thought that there were occasions when she sent respondent a bill for extracurricular expenses and he refused to pay.

¶ 9    Respondent testified that he is a dentist; the building in which he practices is owned by a partnership and he is one of 10 or 12 partners. He, however, practices under his own name, as "Ronald C. Putzler DDS, Ltd.," and is the sole shareholder of that corporation. Respondent has a Dodge Ram pickup truck that he purchased for $25,662 in the fall of 2008, is titled in his corporation's name, is depreciated under the corporation, is insured through

the corporation, and for which the corporation purchases the gasoline. The distance from respondent's home to his dental practice is 15 miles. On occasion, but "not very often," respondent leaves his office for business purposes, to help an elderly patient at home or to go to a dental lab. If a member of his staff runs an errand for the business, he "usually" lets him or her take the truck. Respondent's office has three telephone land lines; in addition, the business pays cell phone bills for respondent, his girlfriend, his children, and four members of his staff (as a work courtesy, *i.e.*, a perk).

¶ 10 Respondent agreed that, besides the truck, he owns three motorcycles and three other vehicles. As to the vehicles, in 2007, respondent purchased a Corvette for $47,900 (only $200 remains on the loan). In 2009, respondent purchased a Factory Five home construction vehicle kit (to build a car similar to a "Carroll Shelby Cobra") for $19,800. He also owns a Ford pickup truck. The motorcycles consist of a 1967 Harley-Davidson (purchased for $12,000 in 2007), a 2007 Harley-Davidson (purchased for $18,000 in 2006), and a custom-built motorcycle (built with $12,000 worth of materials in 2009). In 2008, respondent purchased two Honda all-terrain vehicles for $2,000 each. Respondent rents a storage unit in which he stores his Corvette and his father's three antique Thunderbirds. He also keeps 2 or 3 old office chairs, 1 set of old office blinds, and 10 to 15 boxes of office records there. Respondent's father does not pay any money toward the storage unit rent; rather, respondent's business pays the rent.

¶ 11 Respondent has approximately $1,000 in savings. He "sometimes" pays real estate taxes. Specifically, respondent and his parents co-own his residence (which he shares with his girlfriend, who contributes nothing to the home expenses). Respondent's parents pay the real estate taxes on the home and he "tries" to reimburse them. For example, on three or four occasions in 2009, respondent paid his parents $600 to apply toward the taxes. Since then he has not made any $600 payments. Respondent testified that, since 2006, his father has assisted him with approximately $40,000 in taxes. Respondent testified that, in 2010, he drew $139,700 from his practice for his salary.

¶ 12 Respondent testified that he pays two-thirds of the children's extracurricular expenses. In 2009, respondent paid a total of $1,670 toward extracurricular expenses. Respondent does not ask petitioner to contribute to the cost of the boys' cell phones, even though they sometimes use them to call her. Respondent performs the boys' dental work, and whatever he cannot do is usually performed as a favor by a colleague.

¶ 13 The court admitted into evidence the deposition of John Coffey, a certified public accountant and the founder of Coffey & Associates, P.C. Coffey testified that petitioner retained him to review respondent's accounting records, including tax returns, business records, and other related documentation, to determine respondent's income for purposes of child support. Coffey did so for the 2009 tax year; he reviewed real estate tax records for respondent's residence and respondent's personal income tax returns, corporate tax returns, financial affidavit, bills, and deposition testimony. Coffey testified that he has testified in court regarding matrimonial matters on approximately 25 occasions and that he is familiar with section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 2008)) and its definition of income for purposes of child support. Coffey examined the corporation's tax returns and identified certain amounts that should not have

been deducted from respondent's "income" for child support purposes. For example, Coffey added back into respondent's income the deductions taken for "perks," or expenses paid by the business that should actually be attributed to respondent, such as auto expenses, telephone expenses, and rent for the storage unit. Coffey explained that, with respect to the Ram truck, as there is only one location for respondent's business and commuting is not a business deduction, there is no business purpose for those vehicle expenses. Similarly, the telephone bills reflected that personal telephone expenses were being paid by the business and that personal assets were stored in the storage unit but the rent was being paid by the business.

¶ 14    The expenses that Coffey added back into respondent's income for child support purposes totaled $17,316. Coffey opined that respondent's 2009 gross income was $189,799, and that his 2009 net income before deducting support was $152,745. Applying the appropriate statutory percentage to that net income, Coffey calculated that respondent should be paying child support in the amount of $42,769 per year, or $3,564 per month. In calculating net income, Coffey factored in respondent paying $600 per month in real estate taxes (which respondent testified he does not regularly do), as well as mortgage interest.

¶ 15    On cross-examination, Coffey agreed that, if respondent drove the Ram truck to work and, thereafter, used it to drive around for business purposes, the vehicle, gas, insurance, and depreciation would be deductible expenses. However, even then, Coffey testified, the deduction would not be dollar-for-dollar; rather, it would be prorated based on the number of miles driven for the business. Coffey testified that it appeared from respondent's records that the vehicle expenses were not being deducted on a prorated basis but, rather, were being deducted in their entirety. Further, he agreed that, if the employees were required to carry company cell phones for their jobs, the phones would potentially be deductible. He noted, however, that the children's cell phones were being deducted and the children were not business employees. Finally, with respect to the storage unit, Coffey testified that storing a few business-related items there does not qualify the rent as a business deduction; rather, "it's more a matter of what's primarily being stored there." Respondent did not offer any evidence to contradict Coffey's testimony.

¶ 16     On December 23, 2011, in a six-page, single-spaced order, the trial court granted the petition to increase child support. The court rejected respondent's argument that petitioner failed to demonstrate that expenses for the minor children had substantially increased. The court (citing *In re Marriage of Lambdin*, 245 Ill. App. 3d 797, 806-07 (1993), and *In re Marriage of Heil*, 233 Ill. App. 3d 888, 891 (1992)) noted that, regardless of whether the children's needs had increased, support obligations may be increased based upon an increase in the supporting parent's ability to pay and, further, that an increase in children's needs may be presumed because they have grown older and the cost of living has risen (citing *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 105 (2000)).

¶ 17    The court also found, based on petitioner's two financial affidavits, that, despite an increase in her salary and a previous increase in child support, petitioner's monthly shortfall remained at $1,658. The court found that certain of the children's expenses had increased, including food, clothing, gasoline, haircuts, school costs that respondent is not required to reimburse (registration fees, calculators, lab fees, field trips, etc.), and car insurance. Further,

the court found that, since 2006, petitioner experienced increased expenditures related to the house where she and the children reside, including: $7,500 in roof repairs; $7,000 to replace rotted deck rails; $3,154 to stain the house; $2,500 to install a water purification system; $835 to replace the dishwasher; $800 associated with surveys and flood plain map amendments associated with flood insurance; $350 to replace stone veneer; and $259 to replace a garage door opener. The court noted that petitioner had taken steps to try to decrease her monthly shortfall, including refinancing the mortgage on two occasions, shutting off gas to the exterior building on the property, renting space in that building, borrowing funds, and using her savings.

¶ 18      The court rejected respondent's argument that petitioner insufficiently substantiated what portion of each expense went to the children, noting that petitioner was not required to list specific dollar amounts for each expense item. The court stated that it found petitioner credible when she testified to the increased expenses for the children. In addition, the court agreed with Coffey's analysis that certain deductions should be added back into respondent's income for child support purposes, and it noted that Coffey's testimony was uncontradicted. The court adopted Coffey's determination of respondent's gross and net incomes, setting his net income at $164,674 annually, resulting in child support of $46,109 annually and $3,842 monthly. Subsequently, on December 27, 2011, in an amended order, the court corrected some errors in its calculations and set support at $3,703 monthly.

¶ 19                                    B. Contempt and Attorney Fees

¶ 20      While the child support petition was pending, on October 13, 2009, petitioner also filed a petition for rule to show cause, seeking to hold respondent in indirect civil contempt. Petitioner alleged that, in violation of a July 17, 2007, court order, respondent took the children to a Jimmy Buffett concert. On November 6, 2009, petitioner filed a second petition for rule to show cause based on respondent's failure to take the children to curriculum night, in violation of an August 31, 2009, order requiring him to take them to such functions. On December 3, 2009, and June 23, 2010, petitioner amended her contempt petitions. On April 1, 2011, the court found respondent in indirect civil contempt both for taking the children to the concert and for missing the school function. The court declined to find respondent in criminal contempt for the concert violation; it specified that defendant's failure to attend the school function was "wilful." Petitioner's attorney was granted leave to petition for fees, which he did on April 21, 2011, seeking $3,125.

¶ 21      On January 9, 2012, the court issued an order addressing respondent's argument that, since petitioner works at her attorney's office and was not billed for attorney fees, she did not "incur" fees and the court lacked authority to order such fees paid. Specifically, the court found distinguishable the case law upon which respondent relied and found it proper to award attorney fees "representing the time spent by petitioner's counsel in successfully prosecuting the rule to show cause." At that time, however, the court did not order the amount of fees to be paid. On April 25, 2012, the court ordered respondent to pay "to [petitioner's attorney]" fees relating to the contempt findings in the amount of $3,125. On May 11, 2012, respondent filed his notice of appeal.

## ¶ 22            II. ANALYSIS

### ¶ 23          A. Jurisdiction

¶ 24      We address first our jurisdiction over this appeal. Petitioner questions our jurisdiction over the child support modification because the court's order in that regard issued on December 27, 2011, but respondent did not file his notice of appeal until more than 30 days thereafter, on May 11, 2012. We conclude that our jurisdiction is proper.

¶ 25      Although the notice of appeal was filed more than 30 days after the court's ruling on the child support petition, the record reflects that the petition was pending at the same time as the contempt petitions. Although each petition addressed different issues, the three were simultaneously pending postdissolution petitions, considered consecutively by the court. The court did not, when it issued the child support order, find pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that, although other claims remained pending, there was no reason to delay appeal. See, *e.g.*, *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 727 (2007) (a Rule 304(a) finding is required in order to appeal a final order on one postdissolution petition when another remains pending). Accordingly, where respondent timely filed his notice of appeal after *all* pending claims were resolved, we have jurisdiction to consider the court's ruling on the child support petition.

### ¶ 26         B. Child Support Modification

¶ 27      Respondent argues that the trial court erred in granting the petition to increase child support, because petitioner did not establish a substantial change in circumstances warranting a modification. Essentially, respondent's numerous allegations in this regard can be condensed to the following three: (1) petitioner's expenses are lumped together such that there is no substantiation that the children's portion of expenses has increased; (2) petitioner's affidavits reflect that her expenses have decreased and her income has increased; and (3) although respondent's income has increased, the requirement that he pay two-thirds of any extracurricular and uncovered medical expenses provides a built-in mechanism for increasing child support in the face of inflation and cost-of-living increases. We reject these arguments and affirm.

¶ 28      The Act provides that a child support order may be modified upon a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2008). "The findings of the trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 675 (2005); see also *In re Marriage of Watling*, 183 Ill. App. 3d 18, 22 (1989) (modification of child support rests in trial court's sound discretion). "It is well established that an abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court." *In re Smith*, 2012 IL App (2d) 110522, ¶ 46.

¶ 29      First, as noted by the trial court, case law reflects that a substantial change in circumstances justifying a modification increasing child support may be based solely upon an increase in the supporting parent's ability to pay. See *Lambdin*, 245 Ill. App. 3d at 806 ("Child support obligations may be increased pursuant to the Act based upon the supporting

parent's increased ability to pay, regardless of whether the child's needs have also increased."); *Heil*, 233 Ill. App. 3d at 891 ("[t]he increased ability of the obligor parent alone can justify an increase in child support"). Here, respondent does *not* disagree that his income has increased since the 2007 child support increase. In his reply brief, he states that he disagrees that his income has increased to the extent testified to by Coffey; however, the trial court found Coffey's testimony credible, and respondent did not offer any evidence to rebut Coffey's testimony. Respondent attempts to distinguish the aforementioned cases by suggesting that, despite his increased ability to pay, he need not pay more because he already paid more than the supporting parents did in those cases and his children's needs were already being met, but his assertions are self-serving and, of course, contrary to petitioner's arguments and the trial court's findings. Accordingly, where it found that the increase was justified on the basis that respondent's income had increased, the court did not abuse its discretion.

¶ 30    Second, although it appears that we could affirm on the aforementioned basis alone, we nevertheless note that we may also affirm because there was evidence supporting the trial court's finding of an increase in the children's needs. See *Sweet*, 316 Ill. App. 3d at 105 (the party seeking increase must establish both an increased ability to pay and increased needs). Respondent argues that petitioner did not establish an increase in the children's needs because, for example, she was unable to identify which portion of each credit card balance constituted expenses pertaining to the children and which portion of the food bill was related to the children. However, as the trial court noted (and respondent concedes), petitioner was not required to list specific dollar amounts for each expense item. See *id.* (the petitioner was not required to list specific dollar amounts for each expense item and her testimony that "the children ate more, their clothes cost more, and they had additional expenses for social activities" provided evidence for the court's conclusion that there had been a substantial change in circumstances). Respondent suggests that we would essentially be "rewarding" petitioner for her lack of specificity were we to affirm; we disagree. Respondent suggests a burden that does not exist. Further, the trial court considered respondent's argument regarding the sufficiency of petitioner's evidence of the children's increased needs, and, even setting aside her documentation, the court specifically found credible petitioner's *testimony* that the children's expenses have increased.

¶ 31    Moreover, although respondent argues that the expenses listed on petitioner's 2009 affidavit are relatively unchanged since her 2006 affidavit and her income has increased, petitioner testified and the court found credible that, even where an expense appeared unchanged, either the children's portion of that relatively fixed expense had increased *or* petitioner undertook measures to keep it unchanged in the face of increased costs (such as the gas bill remaining unchanged only because she cut off gas to a portion of the property). Further, in its findings the trial court accounted for petitioner's increase in income but determined that, even with that increase, rising costs in other areas continued to leave her with a significant monthly shortfall. We cannot conclude that the court's findings constitute an abuse of discretion.

¶ 32    Respondent argues that, although a court may generally presume an increase in children's needs on the basis that they have grown older and the cost of living has risen (see *id.*), here

such a presumption is unjustified because the dissolution judgment already includes a mechanism to account for that increase by requiring him to pay two-thirds of their expenses, regardless of the total amount. However, the two-thirds arrangement covers only certain specified expenses. Accordingly, respondent's argument that reversal is appropriate in light of the two-thirds arrangement improperly conflates the lump-sum portion of the support award with the two-thirds arrangement. In other words, even if the court considered the fact that, as the children have aged, certain extracurricular expenses have increased, the record contains evidence that petitioner's increased expenditures include many *not* covered by the two-thirds arrangement. For example, the children's home requires maintenance; however, those costs are not subject to the two-thirds arrangement. Similarly, school expenses that are *not* extracurricular are not offset by the two-thirds arrangement, nor are costs related to food. Accordingly, even setting aside extracurricular activities and medical expenses, evidence remains to support the court's findings.

¶ 33    In sum, we cannot reverse the trial court's child support modification. There was evidence in the record from which the trial court could have found a substantial change in circumstances, based both on respondent's increased ability to pay and an increase in the children's needs. We affirm the trial court's decision.

¶ 34                                C. Attorney Fees

¶ 35    Respondent next argues that the trial court erred in awarding petitioner $3,125 in attorney fees related to her pursuit of the contempt petitions. Specifically, respondent argues that: (1) the trial court declined to find him in contempt on one of the two contempt petitions, so attorney fees should not be assessed on the unsuccessful petition; (2) to impose fees pursuant to section 508(b) of the Act (750 ILCS 5/508(b) (West 2008)), the court was required to find that his failure to comply with the court order was without compelling cause or justification, which it did not do; and (3) because petitioner did not have to pay her attorney (by virtue of the fact that she worked at her attorney's law firm), the attorney should not recover any fees. We reject these arguments.

¶ 36    First, it is unclear what respondent means when he argues that the court declined to find him in contempt on one of the petitions. The April 1, 2011, order that resolved the contempt petitions specified that, while the court declined to find respondent in *criminal* contempt for taking the children to a Jimmy Buffett concert, it did find him in indirect *civil* contempt for *both* taking the children to the concert and failing to take the children to a school function. Accordingly, we reject respondent's argument that we must vacate or reduce the fee award on the basis that one petition was unsuccessful.

¶ 37    Second, respondent argues that, although the court found him in indirect civil contempt for not taking the children to a school event, it did not find that his failure to do so was without compelling cause or justification. Section 508(b) of the Act provides that "[i]n every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court *shall* order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." (Emphasis added.) 750 ILCS 5/508(b)

(West 2008). Thus, the court has no discretion under section 508(b) except to determine if the failure to comply with an order was without compelling cause or justification; if it so finds, attorney fees must be imposed. See *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 716 (2005).

¶ 38 Here, petitioner sought to enforce two court orders. The court found that respondent's failure to comply with those orders was contemptuous, and, further, it specifically found "wilful" respondent's failure to take the children to a school event. Although in its written order the court did not state that the failure to comply with the court orders was "without compelling cause or justification," such findings are implied by the contempt findings. Preliminarily (and as to *both* contempt findings), "finding a party in contempt for failing to comply with a court order implies a finding the failure to comply was without cause or justification," rendering mandatory the imposition of attorney fees per section 508(b). *In re Marriage of Deike*, 381 Ill. App. 3d 620, 634 (2008). Specifically, "[b]ecause the primary prerequisite to *any* contempt finding is willful, contumacious conduct, it follows that a finding that a party is in contempt of court for failing to comply with a court's orders carries with it an *implicit* finding that the failure to comply was without cause or justification." (Emphases added.) *In re Marriage of Cierny*, 187 Ill. App. 3d 334, 348 (1989).

¶ 39 Moreover, with respect to the court's order labeling respondent's actions regarding the school event as "wilful," a finding that a failure to comply with a court order was "wilful" is equivalent to a finding that noncompliance was without compelling cause or justification. *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 192 (1995); see also *In re Marriage of Kolessar*, 2012 IL App (1st) 102448, ¶ 25. Thus, as both contempt findings inherently found that respondent's actions were without compelling cause or justification, the court was required, per section 508(b), to impose attorney fees for petitioner's prevailing efforts to seek enforcement of the court orders.

¶ 40 Finally, respondent argues that the attorney fee award should be vacated because petitioner did not, by virtue of her employment at the law firm, pay any attorney fees.[1] Respondent states that, "on information and belief," if petitioner had had to pay for the legal services rendered, she would not have filed the contempt petitions.[2] We reject this argument. First, as stated above, section 508(b) makes *mandatory* the imposition of attorney fees where the party seeking enforcement of court orders prevails and the court finds that the other party's failure to comply was without compelling cause or justification. Although, on one hand, section 508(b) serves to limit the financial burden assumed by the party who pursues an enforcement action (see, *e.g.*, *In re Marriage of Young*, 200 Ill. App. 3d 226, 230 (1990)), it also exists as a means of sanctioning unjustified violations of court orders (see *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 359 (2000); *Kaufman, Litwin & Feinstein v. Edgar*, 301 Ill. App. 3d 826, 832 (1998)). That fees under section 508(b) may be imposed

_____

[1]In its order, the trial court noted that, at the hearing on the contempt petitions, it heard evidence that petitioner was not billed for her attorney's services. A transcript from that hearing is not contained in the record.

[2]Respondent cites no basis for his "information and belief."

as merely a sanction is supported by the fact that a trial court must impose fees without consideration of either party's ability to pay. *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1098 (1992). Instead, the court considers only the reasonableness of the fee award, based on factors such as time spent, the ability of the attorney, and the complexity of the work.[3] *Id.*

¶ 41    As such, here, we find that petitioner's fortuitous employment by her attorney, and his decision to not bill her for his time and effort (which, presumably, could have been spent working on other matters), did not preclude the court from imposing, as a section 508(b) sanction, reasonable attorney fees representing the time counsel spent pursuing enforcement of the court's orders. See, *e.g.*, *In re Marriage of Brockett*, 130 Ill. App. 3d 499, 501 (1984) (determining that awarding attorney fees under section 508(a) of the Act was not precluded by the fact that the petitioner was represented by a legal aid agency and was not, therefore, obligated to pay her attorney). Essentially, although petitioner was not personally burdened by the incursion of attorney fees and, thus, did not need to be made whole, the fees nevertheless represent an amount that both sanctions respondent and compensates counsel for the services he necessarily expended on his client's behalf. While we would agree that ordering respondent to pay *petitioner* would represent a windfall to her, the court did not do so but, rather, ordered respondent to pay petitioner's counsel.

¶ 42    Second, respondent's reliance on *In re Marriage of Magnuson*, 156 Ill. App. 3d 691, 701-02 (1987), for his argument that attorney fees are limited to the amount of the *contract* entered into between the party and the attorney is misplaced. *Magnuson* involved a party's request for fees under section 508(a) of the Act, which, at that time, permitted a court to consider the financial resources of the parties and to order one party to pay for the attorney fees "necessarily incurred" by the party lacking sufficient financial resources to obtain or retain legal representation. *Id.* at 702. The *Magnuson* court ruled that the phrase "necessarily incurred" as used in the statute required one party to be personally liable for the fees before the other party could be required to pay them and, further, that the fees awarded could not exceed the amount contracted to between the attorney and his or her client. *Id.* Here, we consider section 508(b), not section 508(a), and, in any event, section 508(a) has been amended and the "necessarily incurred" language relied upon by the court in *Magnuson* was deleted. See 750 ILCS 5/508(a) (West 2008). As such, *Magnuson* is not applicable here.

¶ 43    For the foregoing reasons, the trial court's imposition of attorney fees is affirmed.

¶ 44                                    III. CONCLUSION

¶ 45    The judgment of the circuit court of Kendall County is affirmed.

¶ 46    Affirmed.

---

[3]We note that respondent here does not challenge the reasonableness of the fee award. Rather, his arguments pertain to whether fees should have been awarded at all.