2025 IL App (3d) 240453

Opinion filed December 3, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| DEEPAK V. PATEL, | ) | Du Page County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-24-0453 |
| and | ) | Circuit No. 20-D-381 |
| | ) | |
| BINITA PATEL, | ) | Honorable |
| | ) | Leah D. Setzen, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court, with opinion.
Justices Hettel and Anderson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Petitioner, Deepak V. Patel, appeals the Du Page County circuit court's decision to modify

the original child support order in his dissolution case. The modification required that Deepak pay

respondent, Binita Patel, child support in the amount of $3,750 per month for their two minor

children. The original order required him to pay $789 per month. Deepak argues that the court

erred in finding that the parties' agreement contained in their marital settlement agreement (MSA)

capping his income at $500,000 for child support purposes was voidable. He also asserts the court

abused its discretion in setting the modified dollar amount. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3         Deepak and Binita were married on May 16, 2010. They had two children during the marriage who are both still minors.

¶ 4         Divorce proceedings began on February 21, 2020, and the parties signed an agreed allocation judgment related to their parental responsibilities on August 17, 2020. Pursuant to the allocation judgment, Deepak and Binita were to share all major decisions related to the minor children. Binita received primary custody of the children for school purposes. The parenting time schedule awarded Deepak 170 overnights. Binita received the remainder.

¶ 5         The court entered an order of support on October 20, 2020, indicating Deepak's gross annual base income was approximately $250,000 and that he was to pay $789 each month in child support. It further required that the parties perform a true-up each year pursuant to the terms of the MSA. This order was a form order on which the space designated to provide reasons for any deviations remained blank.

¶ 6         The judgment for dissolution of marriage was also entered on October 20, 2020, and incorporated the MSA. It provided that both parties waived spousal maintenance and were to follow the terms set forth in the MSA. It further stated that the ability to modify the terms of the MSA was controlled by section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502(f) (West 2020)).

¶ 7         The MSA reflected that Deepak's $789 per month payment to Binita was based on Deepak's salary of $250,896, Binita's salary of $130,000, and the allocation agreement that allowed Deepak 170 overnights. The parties agreed to exchange tax returns annually for the preceding year to determine salary information. Regarding any additional income and the future calculation of child support, the MSA provided the following:

"If DEEPAK earns any additional gross income from any source between his gross yearly base incomes as set forth herein ($250,896.00) and the sum of $500,000.00 gross annually, DEEPAK shall tender six percent (6%) of the net amount of said additional income for additional child support to BINITA. Any gross earnings by DEEPAK that exceed $500,000.00 are not includable in DEEPAK'S 'additional income for child support purposes' and remain his sole and separate property, free and clear of any claims from BINITA. Specifically, *DEEPAK has no child support obligation to BINITA on any gross income earned in excess of $500,000.00 irrespective of its source—and the $500,000.00 cap on DEEPAK'S total income for child support purposes is non-modifiable*. Deepak shall tender any additional income child support payments to BINITA (*i.e.* 6% net of any additional income between $250,896.00 and $500,000.00) within 14 days of DEEPAK receiving any such additional income. In addition, on or before June 1 of any applicable year, the parties shall engage in a 'true-up' to calculate the total 'additional income for child support purposes' between $250,896.00 and $500,000.00—and to ensure that BINITA has correctly received 6% net of any such additional income of DEEPAK'S." (Emphasis added.)

¶ 8     Deepak was required to pay 65% of the children's additional expenses, including medical, school, and extracurricular expenses. Binita was responsible for the remainder. Deepak was also required to maintain health insurance coverage for the children.

¶ 9     The parties agreed to the following provision regarding modifications:

"BINITA and DEEPAK agree that *this Agreement precludes any modification of the terms and conditions contained herein and is non-modifiable, except as it*

*relates to CHILD(REN)*, except as to Article IX and spousal maintenance, or except by written agreement of the parties incorporated within a court order. The modifiability of the terms and conditions contained in the Marital Settlement Agreement are controlled by 750 ILCS 5/502(f) of the ACT." (Emphasis added.)

¶ 10 The court made the following findings prior to entering judgment:

"[H]usband will pay to wife the sum of $789.00 each and every month as and for child support for the parties' minor children. There are other terms contained within the marital settlement agreement governing child support. And the Court notes that these amounts are represented in accordance with Illinois statutory guidelines regarding child support. Therefore, the child support provision of the proposed marital settlement agreement is approved."

¶ 11 Deepak filed a motion to modify child support and the allocation of parenting time on March 6, 2023. He asserted that he had the children 50% of the overnights and asked that the allocation judgment be modified to reflect that reality. He also cited an increase in Binita's income and the change in parenting time as changes in circumstances that would allow for a modification of child support. On September 22, 2023, Binita filed her own motion to modify child support and a petition to vacate the original child support order. She argued that the order was voidable because it set a cap on Deepak's income and did not specify a reason for deviating from guidelines for child support. The parties later entered into an agreed order modifying the allocation judgment, and Deepak withdrew his motion to modify child support.

¶ 12 A hearing on Binita's motion to modify was held on April 24, May 13, and June 12, 2023. Deepak testified that he earned $384,722.47 in the year the parties divorced. His W-2s reflected a significant increase over the ensuing years. His paystub showed that he earned $12,065.62

4

biweekly, which equaled a base income of $313,000 annually. The 2023 W-2 showed his earnings as $868,142.39 for Medicare calculations, which included base salary and bonuses. He also received bonuses marked as "equity" in stocks that he paid taxes for but had not yet received. He predicted that he would make approximately $464,000 for the 2024 calendar year because his company expected bonuses to decrease. Deepak also testified that he had remarried and estimated his spouse's annual income as more than $300,000.

¶ 13      He also testified that the estimated costs for the children's daycare and extracurricular activities had decreased because less daycare was necessary now that the children were in school all day and the children were not participating in as many extracurricular activities. Additionally, while the youngest child was in private school and daycare at the time of the divorce, he was now in public school, which lessened educational expenses.

¶ 14      Binita testified that her current base salary was $210,000—an increase from the $130,000 she made at the time of dissolution. She stated that between her income and the amount she received in child support every month she struggled to meet all her and the children's expenses. Immediately after the divorce, she had a mommy's helper and other support to assist her with the children. Those resources were no longer available. She testified that she was struggling to make everything work between work, the children and their activities, and "the additional add-ons that have been added on as the kids have gotten older." While Deepak had another adult in the home to help support him and the children's activities, no one else resided in her home, and she had no other support. The children were currently involved in and had expenses for several extracurricular, education, and religious activities. Binita paid 35% of the children's expenses.

¶ 15      Binita also testified that she had taken several vacations with the children and on her own since the divorce, including trips to Michigan, Maryland, and New Jersey. She also went on several

work-related and non-work-related trips to Mexico, India, and Portugal. Additional trips were planned for later in the year. Some trips were to visit family or for business, and some had been paid for by work or friends.

¶ 16    The court found that the language of the MSA that created a nonmodifiable cap on child support was voidable. It found that it was also voidable because the court did not make the required written findings pursuant to section 505(a)(3.4) of the Act providing the reasons why it deviated from the child support guidelines in setting that cap. See 750 ILCS 5/505(a)(3.4) (West 2022). Additionally, the court found the changes in the parties' incomes constituted a substantial change in circumstance that allowed it to consider a modification of child support.

¶ 17    Next, the court found that Deepak's salary had increased significantly since dissolution, with the last four years of his income averaging $874,000. It also found Binita's had increased and used $220,460 as her base salary given that her income was not as variable as Deepak's. The court acknowledged that the highest amount of child support under the scheduled basic obligation calculations was $2,026 per month. However, it ordered Deepak to pay Binita $3,750 per month, which took into account the parties' current incomes and "other evidence presented at hearing."

¶ 18    The court provided the following reasoning:

> "The Court does find that the language of the parties' marital settlement agreement and judgment agreeing to a nonmodifiable cap on child support is voidable. Provisions of an agreement pertaining to child support may not be made nonmodifiable. *** Further, because the Court did not make written findings pursuant to 505(a)(3.4) of the Illinois Marriage and Dissolution of Marriage Act specifying the reasons for the deviation the child support order is, likewise, voidable. Even if the child support order was not voidable, [Binita] has met her

6

burden of proof to show a substantial change of circumstances has occurred since the entry of the judgment in October of 2020.

[Deepak] testified his gross annual income for 2020 totalled [*sic*] $381,722.47 and increased each year thereafter for a current estimated gross annual income of at least $1.38 million, an actual increase of 361 percent. A substantial change in circumstances may be based solely on an increase in the supporting parent's ability to pay, and there are several cases in support of that[.]

\* \* \*

[Deepak] argued that the parties contemplated that he would earn more than $500,000 in agreeing to a cap on child support; however, the Court has already determined that said agreement was voidable; and, further, there was no indication the parties contemplated [Deepak] would have an increase in income of 361 percent. \*\*\* Additionally, [Binita's] income has increased significantly by 70 percent since the entry of the judgment for dissolution of marriage; therefore, once a substantial change in circumstances has been demonstrated the Court must set child support pursuant to the statutory guidelines set forth in Section 505(a) of the Illinois Marriage and Dissolution of Marriage Act unless the Court finds a reason to deviate from said guidelines.

In this matter the parties' combined net income—net monthly incomes exceed the highest level of the scheduled basic child support obligation; therefore, the Court must use its discretion to determine child support provided that the amount shall not be less than the highest level of combined net income set forth in the schedule of basic child support obligation.

7

\* \* \*

In consideration of the parties' current incomes and the other evidence presented at hearing, the Court sets child support at $3,750 per month retroactive to the date of filing."

¶ 19 Deepak appeals.

¶ 20 II. ANALYSIS

¶ 21 Deepak makes several arguments on appeal. First, he argues that the circuit court erred in finding that the provision of the MSA declaring the income cap non-modifiable was voidable. He also contends that the court abused its discretion by setting his child support obligation at $3,750 per month. We address each of these issues in turn.

¶ 22 A. Binita's Rule 341 Claim

¶ 23 Before moving to the merits of this appeal, we must first address a concern raised by Binita. Binita contends that Deepak's brief does not meet the requirements of Illinois Supreme Court Rule 341(h)(3) (eff. Oct. 1, 2020) because he included a standard of review heading prior to the statement of facts instead of in the discussion of the argument. She asks us to strike his brief and dismiss the appeal due to this noncompliance with the rule. We first note that Rule 341 requires the standard of review to be included either in the discussion of the argument or under a separate heading before the argument begins. *Id.* Deepak's brief includes a separate section prior to discussion of the argument; therefore, it complies with the rule. Furthermore, dismissing an appeal for failure to comply with rules is a drastic measure that we choose not to entertain here. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14. Deepak's brief is in substantial compliance, and we do not find any alleged noncompliance so deficient as to

8

hinder our review of the issues on appeal. See *Spangenberg v. Verner*, 321 Ill. App. 3d 429, 432 (2001).

¶ 24                                                   B. Income Cap

¶ 25         We begin our substantive analysis with Deepak's argument that the circuit court improperly found the provision in the MSA capping his income for child support purposes was voidable. The circuit court found that the original order was voidable for two reasons: (1) because child support orders cannot be nonmodifiable and (2) because a cap is a deviation, and the circuit court did not provide the written findings to support the deviation. This issue concerns a question of law which we review *de novo*. *Askew Insurance Group, LLC v. AZM Group, Inc.*, 2020 IL App (1st) 190179, ¶ 21.

¶ 26         The circuit court found that the order was voidable because the court did not make the required finding that a deviation from the child support guidelines was necessary when it originally entered the order. The circuit court must make express written findings explaining why a deviation was necessary when a child support order departs from guideline support set forth in section 505 of the Act. See 750 ILCS 5/505(a)(3.4) (West 2022); *In re Marriage of Barboza Fisher*, 2018 IL App (2d) 170384, ¶ 22. Deepak argues that the court did not need to provide any explanation for a deviation at that time because Deepak's monthly payment followed the statutory child support guidelines. He contends that at the time of the original judgment there was no evidence that Deepak's income would ever exceed the $500,000 cap that was contemplated in the order; thus, it did not create a downward deviation from the child support schedule.

¶ 27         Deepak further argues that setting a cap on future earnings does not trigger deviation language when setting current support. However, *Barboza Fisher* stands on the proposition that an income cap, in and of itself, creates a deviation that requires the court to make those written

9

statutory findings. *Barboza Fisher*, 2018 IL App (2d) 170384, ¶ 25. Deepak attempts to distinguish this case from *Barboza Fisher* by arguing that the agreement in that case created a downward deviation, and the payee eventually experienced a decrease in salary rather than the increase the parties experienced here. See *id.* ¶ 7. However, Deepak's focus is misguided. The court in *Barboza Fisher* determined that written findings were required because an income cap is a deviation, regardless of whether the parties eventually see a change in salary. See *id.* ¶ 25 (finding that the circuit court should have provided "specific reasons why the deviation from the statutory guidelines, by placing a cap on [Respondent's] income for child support purposes, was in the children's best interests"). The inclusion of any kind of income cap in a child support order required the court to make the necessary written finding. See *id.* No such findings were made by the court; therefore, the court did not err when finding that the portion of the parties' agreement placing an income cap on child support was voidable.

¶ 28    Furthermore, even had the circuit court made the findings required by *Barboza Fisher*, either party could still petition to modify child support based on a substantial change in circumstances. See *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1064 (2007); see also *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988) (parties may not contract away rights to petition to modify child support because the circuit court is obligated to protect the best interests of the children involved). The parties simply cannot agree to limit the court's power to set child support. See *Rife*, 376 Ill. App. 3d at 1064.

¶ 29    Deepak next contends that the income cap should be honored because the parties agreed to the terms of the MSA, and deference should be given to that agreement when the court's goal should be to give effect to the parties' intent when constructing the terms of the MSA. Deepak is again misguided in his interpretation of the law. While Deepak is correct that the court must

10

attempt to give effect to the terms of a contract and the parties' intent when creating those terms, the court must still keep the children's best interests in mind while doing so. See *id.* Thus, the circuit court was not bound by the terms of the parties' MSA. See *Barboza Fisher*, 2018 IL App (2d) 170384, ¶ 25 ("It is well settled that it is the *court's responsibility*, not the parties' responsibility, to determine the adequacy and amount of child support. [Citation.] Therefore, the fact that the parties agreed in the MSA that child support should be capped is irrelevant." (Emphasis in original.)).

¶ 30    Here, an increase in Deepak's salary was clearly contemplated. Indeed, his average salary increased by a significant amount—more than 300%. It is clear that Binita demonstrated that a substantial change in circumstances occurred that allowed the court to consider the modification of child support. See, *e.g.*, *In re Marriage of Gits*, 2015 IL App (2d) 130757-U, ¶ 36 (finding that an increase of 2.5 times the income level of years prior could not have been contemplated when an income cap was agreed to and such an increase in income created a substantial change in circumstance requiring a modification of child support). Thus, the court did not err when finding that it was not bound by the income cap or modifiability clause in the MSA and that there was a sufficient change in circumstance to justify modifying the parties' child support order.

¶ 31                               C. The Modification Amount

¶ 32    Deepak next argues that the significant increase in child support was improper. Specifically, Deepak argues that the court failed to consider the evidence introduced through Binita's testimony that she had significant income herself and could afford to travel several times throughout the year. Additionally, Deepak argues that the court abused its discretion because there was no evidence of the children's needs, cost of living, and standard of living had the marriage not dissolved. He asserts that the children's needs were more than met and did not justify a higher

11

support obligation. The evidence demonstrated that the children enjoyed multiple domestic and international vacations throughout the year, participated in various extracurricular activities, and were fully cared for without the need for additional child support. The only evidence to indicate needs were not met was Binita's testimony that she was "struggling to make it work," though no other explanation was given to support that assertion. Also, no medical expenses or private school expenses were presented to the court to indicate that the children's expenses would soon increase. Deepak argues that this significant increase results in nothing but an "improper windfall" for Binita because the needs of the children did not support it.

¶ 33    A modification of child support may be allowed only upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2022). An increase in one's ability to pay may be the sole basis for a substantial change in circumstances that would justify a modification increasing child support. *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 29. A court's factual findings on a petition for a modification of child support will not be reversed absent an abuse of discretion. *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 17. A court abuses its discretion when no reasonable person would agree with the decision or when it is obvious that the court acted arbitrarily and without conscientious judgment. See *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 306-07 (2002). Further, we will not find error in any factual conclusions supporting the modification unless they are against the manifest weight of the evidence. *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 233 (2008). A decision is against the manifest weight of the evidence when " 'an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *Id.* (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995)).

¶ 34    Typically, child support calculations are determined by applying statutory guidelines. 750 ILCS 5/505(a)(2) (West 2022). A court must utilize both parents' net monthly income and use a

12

schedule published by the Department of Healthcare and Family Services (DHFS) to determine basic child support obligations based upon income and number of children. See *id.* § 505(a)(1). The court then calculates each parent's share of that obligation based upon parenting time. *Id.* § 505(a)(1.5)(D). When the combined net income exceeds the highest level of the schedule, the court has discretion in setting child support outside of those guidelines. *Id.* § 505(a)(3.5). It should not have unfettered discretion, however. The court may not order an amount lower than the amount corresponding to the highest level on the schedule. *Id.* Additionally, when a court sets support outside the schedule, it must consider financial resources of the child and custodial parent; standard of living the child would have had if the dissolution had not occurred; the educational, physical, and emotional condition of the child; and the financial resources of the noncustodial parent. *Id.* § 505(a)(2); *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 35 (1997).

¶ 35        There is no argument that the current child support order requires Deepak to pay more than the highest level of support in the state guideline tables. It is also undisputed that the parties' combined net income is higher than the highest contemplated by the DHFS child support schedule. The circuit court stated that the decision to order $3,750 per month in child support was made "[i]n consideration of the parties' current incomes and the other evidence presented at hearing." We must therefore determine whether the facts established at the hearing are sufficient to support the court's ruling.

¶ 36        A review of the record indicates that the amount awarded was reasonable and not an abuse of discretion given the parties' income and the statutory factors the court was allowed to consider. Deepak's total income averaged to over $800,000—more than three times his salary when child support was originally set. Binita's salary was approximately $18,000 per month. While Deepak argues that this average salary is not accurate due to an anticipated decrease in his bonus, averaging

13

income that fluctuates from year to year is an accepted method for the court to apply when determining income for child support purposes. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1025 (2003). Even so, evidence presented at the hearing established that Deepak's gross base salary was over $25,000 per month, and the obligation set by the court amounts to approximately 15% of his gross monthly base salary, a factor appropriately considered by the court. See 750 ILCS 5/505(a)(2)(B) (West 2022) (financial resources of the parents should be considered). If, as Deepak predicts, his income significantly decreases in the coming years, nothing will prevent him from filing his own petition to modify support. See *id.* § 510(a)(1). Further, it is well settled that if one parent earns a disproportionately greater income than the other, he should bear a larger share of the support. *Singleteary*, 293 Ill. App. 3d at 38. The child support order here clearly supports these principles.

¶ 37        The court may consider the standard of living the children would have experienced had the marriage not dissolved. See 750 ILCS 5/505(a)(2)(C) (West 2022). Here, the children had access to various physical, educational, and religious extracurriculars—as well as private schooling— prior to the dissolution. Since dissolution, the children have enjoyed several vacations with their mother and their father, and they continue to have access to various extracurricular activities. It is no matter that these activities and vacations with Binita are not necessary. The support awarded will further the goal of allowing the children to continue their extracurriculars and general lifestyle while with either parent. See *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 412 (1990) (finding that "where a noncustodial parent has the ability to pay support in excess of the stated needs of the child, a court may order child support in excess of the needs to enable the child to enjoy the standard of living he would have had" if the dissolution had not occurred). Lastly, it is readily

14

apparent from the records that the children would have enjoyed a prosperous lifestyle if the dissolution had not occurred.

¶ 38 All the evidence indicates that the amount set by the court was reasonable. The child support obligation was appropriate considering the financial abilities of both parents and did not significantly hinder Deepak's ability to enjoy his existing lifestyle. It also allowed the children to maintain the lifestyle to which they had become accustomed to both before and after the dissolution of the marriage. Therefore, the court acted reasonably when ordering Deepak to pay $3,750 per month for child support and did not abuse its discretion.

¶ 39 III. CONCLUSION

¶ 40 The judgment of the circuit court of Du Page County is affirmed.

¶ 41 Affirmed.

*In re Marriage of Patel*, 2025 IL App (3d) 240453

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 20-D-381; the Hon. Leah D. Setzen, Judge, presiding. |
| **Attorneys for Appellant:** | Olga A. Allen and Priyal Thakkar, of Hurst, Robin, Kay & Allen, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Todd D. Scalzo and Henry D. Kass, of Mirabella, Kincaid, Frederick & Mirabella, LLC, of Wheaton, for appellee. |